[Nos. A051352, A052325. First Dist., Div. Four. Apr. 10, 1991.]

IRWIN MEMORIAL BLOOD CENTERS, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
ALASTAIR FALCONER et al., Real Parties in Interest.

**COUNSEL**

Charles Bond, Stefanie Y. Gandolfi, Tamara K. Daney, O'Connor, Cohn, Dillon & Barr, Duncan Barr, Lisa T. Ungerer and Susan J. Reifel for Petitioner.

Hanson, Bridgett, Marcus, Vlahos & Rudy and Robert L. Rusky as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Meis & Waite, Sarah Jane Burgess and Michael Pierce Singsen for Real Parties in Interest.

Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris and Anglia S. Benjamin as Amici Curiae on behalf of Real Parties in Interest.

---

## OPINION

**PERLEY, J.**—The petitioner, Irwin Memorial Blood Centers, challenges discovery orders providing for the deposition of blood donors who have been implicated as the source of HIV infection. We conclude that the orders violate Health and Safety Code section 199.20,[1] which prohibits the identification of any individual subject to a blood test to detect antibodies to the probable causative agent of AIDS.[2] Because this conclusion requires the issuance of the relief requested, we do not reach the question of whether the scheduled depositions would also violate the donors' constitutional right to privacy.[3]

The underlying actions come within the Complex Blood Bank Litigation (No. 908-843) which includes approximately 25 transfusion-associated AIDS cases that were consolidated for pretrial purposes. The individual actions involved in these petitions are Falconer v. Irwin Memorial Blood Bank (Super. Ct. S.F. City & County, No. 869028) and Wilson v. Irwin Memorial Blood Bank (Super. Ct. S.F. City & County, No. 864989). In both of the individual actions, petitioner is alleged as a result of its negligence to have furnished blood or blood products containing the HIV virus in screening donors and testing donated blood.

Petitioner provided plaintiffs with cards filled out by the donors at the time that they donated the blood which later was transfused into Alastair

---

[1] Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

[2] Acquired immune deficiency syndrome (AIDS) is evidenced by the presence of antibodies to the human immunodeficiency virus (HIV) in a person's blood. The term "AIDS test" and "HIV test" at times are used interchangeably.

[3] In short, the legislative determination to protect the identity of donors by statute renders a discussion of the constitutional right of privacy unnecessary.

Falconer and Cynthia Wilson. On these cards, each donor answered questions as to medical history and questions relevant to whether the donor was a member of a group found to be at risk for AIDS. All identifying information was deleted from the cards. Copies of follow-up questioning of the donors were also provided, again with identifiers redacted.

On October 27, 1989, plaintiffs moved for general order No. 4 to permit access to blood donors who had been implicated in the transfusion of tainted blood. Plaintiffs differentiated between situations in which petitioner had tested the donor and in which petitioner had not tested the donor. As to each donor who had been tested and found to be antibody positive, and whose name and identity plaintiffs recognized could be protected by section 199.20 et seq., plaintiffs suggested that an anonymous deposition be arranged in which no identifying information would be revealed. As to each donor who had not been tested, plaintiffs requested that petitioner be compelled to provide the name of the donor.

On December 20, 1989, general order No. 4 issued. The court ordered that plaintiffs may have limited discovery by written depositions "which shall be supervised by a referee appointed by the Court, of blood donors who have been identified as possible vectors in the transmission of the human immunodeficiency virus (HIV). The names, addresses, social security numbers and any other identifying information of said donors shall not be disclosed to anyone, including representatives of either Plaintiff or Defendant." The court defined a donor identified as a possible vector as: "(a) those donors who have been found to be HIV positive upon returning to Irwin to donate blood and [being] tested for HIV; (b) donors who have been traced by Irwin and found through research testing to be HIV positive and (c) those donors who became HIV positive or symptomatic of AIDS, and whose identity becomes known to Irwin through public health officials, hospitals, physicians or other health care providers."

The superior court appointed a commissioner as the referee pursuant to Code of Civil Procedure section 2028 to supervise and conduct the depositions.[4] Because of questions raised by petitioner, the superior court held a second hearing regarding the procedure for the confidential depositions on February 16, 1990. The procedure developed at this hearing is substantially that followed by the referee in formulating the written order in the Falconer

---

[4] A deposition under Code of Civil Procedure section 2028 is one by written questions. All parties have an opportunity for input into the questions to be asked although the deposition usually takes place without the presence of the parties or their attorneys. At the deposition, the officer in charge of the deposition propounds all of the questions and makes a verbatim record of the answers.

case. In addition, at the hearing, the superior court stated that the donor could give his deposition from behind a screen.

Through discovery the plaintiffs in the Falconer case were informed that a donor of blood received by Jane Falconer during her heart transplant therapy had subsequently been identified as positive for the AIDS virus. That donor, identified only by number, donated blood on December 28, 1983. The donor's March 11, 1985, donation tested positive for HIV.

On June 25, 1990, a deposition pursuant to general order No. 4 was noticed in the Falconer case. On October 19, 1990, the referee's written order was filed. It provides that the blood bank is to send a certified letter, with the written questions to the donor, setting a five-day telephone response to make arrangements for appearance at the deposition. "If there is no response within five days by the donor, the notice shall be personally served by registered process server upon the donor, with the registered process server knowing only that he is serving a sealed envelope upon the donor. . . . [¶] No one other than Irwin, myself, the court reporter and the donor [and] his counsel if any, are to be informed of the date, time, or location of the deposition before it occurs. [¶] Prior to the date of the deposition, Irwin Memorial Blood Bank, through its counsel, shall transmit a sealed envelope containing an unredacted copy of the original donor card to [the referee]. At the time of the deposition, [the referee] shall hand that sealed envelope to the donor, ask the donor to open it and verify that they [sic] are the individual whose signature appears on that card. The donor shall then keep the donor card."

On January 14, 1991, the referee granted plaintiff's motion to reopen discovery in the Wilson case and ordered limited discovery to proceed in accordance with general order No. 4 and subsequent rulings in the Complex Blood Bank Litigation. The implicated donor was also one who had tested positive for the HIV antibody.

TIMELINESS

■ We consider first the contention that petitioner is guilty of laches in bringing the instant petitions. Real parties point out that general order No. 4 was issued on December 20, 1989, and allowed the anonymous depositions of donors implicated as vectors. Petitioner did not seek review of this ruling until the referee had issued its order for the deposition of the donor in the Falconer case some 10 months later. During this time, the depositions of two donors in two cases were noticed. The time of the court and the parties

was expended in detailing the procedures and settling upon the questions to be asked.[5]

In answer to the contention that its petitions are untimely, petitioner argues that an earlier petition would have been premature since general order No. 4 was merely an enabling order, and the order of the referee was the only order requiring petitioner to act. We do not accept this as an adequate excuse for not acting to challenge general order No. 4 at the time it issued. That order resolved the primary issues petitioner is now raising. When general order No. 4 was issued in December 1989, petitioner knew that anonymous depositions were permitted. At least by February 1990 petitioner was aware of the means by which the anonymity of the donors was to be guarded.

"Laches requires an unreasonable delay in filing the petition plus prejudice to real party." (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 163 [181 Cal.Rptr. 784, 642 P.2d 1305].) We believe these factors are present in this case as to petitioner itself. However, we are unwilling to apply them to defeat a right of privacy of a third party in whose behalf petitioner is acting. No order directly affecting the individual donors was issued until the orders setting the depositions. Unless this court acts now, the privacy right of the donors under section 199.20 will be lost. We, therefore, exercise our discretion in favor of resolving the issue on its merits. (Cf. *People* v. *Superior Court* (*Clements*) (1988) 200 Cal.App.3d 491, 496-497 [246 Cal.Rptr. 122].)

## SECTION 199.20

In 1985, at the time of the licensing of a blood antibody test for the HIV virus, the California Legislature, in urgency measures, "established the statutory framework and the legislative tone regarding AIDS. These bills, denoted Assembly Bills 403 and 488, required written consent from test subjects undergoing the HIV blood test, created heightened confidentiality for these persons by prohibiting disclosure that they had been tested or what their test results were, and established extensive civil and criminal penalties for willful or negligent disclosure of test results." (Kadzielski, *California Legislation of AIDS in the Health Care Setting* (1988) 10 Whittier L.Rev. 363, 364, fn. omitted; see §§ 199.20-199.22.)

The legislation provides that all blood or blood components to be used for transfusions must be tested for the AIDS virus and donors testing positive

---

[5]The other deposition to which real parties refer was in the case of Mathison v. Irwin (Super. Ct. S.F. City & County, No. 864195). A deposition was set in that case but the donor died shortly before the deposition was to take place.

placed on a confidential statewide donor deferral register. (§§ 1603.1, 1603.3.) Except for the disclosures required by sections 1603.1 or 1603.3, the prohibition against compelling disclosure of the identity of donors subjected to testing is absolute: "To protect the privacy of individuals who are the subject of blood testing for antibodies to the probable causative agent of acquired immune deficiency syndrome (AIDS) . . . no person shall be compelled in any state, county, city or other local civil, criminal, administrative, legislative, or other proceedings to identify or provide identifying characteristics which would identify any individual who is the subject of a blood test to detect antibodies to the probable causative agent of AIDS." (§ 199.20.)

■ Real parties contend that the orders challenged do not violate section 199.20 because the identity of the donor is completely protected, or can be completely protected if petitioner will cooperate in having the deposition at the blood bank and behind a screen. We cannot agree. The donor will be seen or heard during the deposition by at least the referee and the reporter. The appearance and the voice of a person are obviously identifying characteristics.

More fundamentally, however, the production of the donor for deposition is in itself an identification within the meaning of the statute. Webster's Third New International Dictionary (1961) at page 1123 defines "identification" as "1a: an act or the action of identifying or the state of being identified." According to the same source, to "identify" is "1b: to link in an inseparable fashion . . . 2a: to . . . show or prove the sameness of . . . ." Until the time that the donor appears for deposition, the donor is a number unconnected to a person. Once the person is required to step forth, the connection between the number and the person is made. The donor has been identified. The *extent* to which that identification is made known to third parties will depend upon the care taken at the deposition but the identification in a civil proceeding has been made. This the statute prohibits.

Let a peremptory writ of prohibition issue restraining respondent court from taking any further action to enforce its deposition orders filed October

19, 1990 in Superior Court No. 869028 and January 14, 1991, in Superior Court No. 864989.

Poché, Acting P. J., and Reardon, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied July 17, 1991. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.