**Patricia DIABO, Administratrix,
Est. of Joseph N. Diabo,**

v.

**BAYSTATE MEDICAL CENTER, et al.**

**Civ. A. No. 91–10648–F.**

United States District Court,
D. Massachusetts.

March 17, 1993.

---

of a decedent who received a blood transfusion tainted by the HIV virus, obtain discovery from and about the donor of the blood? In *Watson v. Lowcountry Red Cross*, 974 F.2d 482 (4th Cir.1992), the Court of Appeals affirmed a district court order permitting limited discovery from the donor through an anonymous deposition upon court-approved written questions under Fed.R.Civ.P. 31. Because this court finds that the procedure permitted in *Watson* sensibly balances the needs of the plaintiff against the concerns of the defendant, and because the procedure is not inconsistent with state authority limiting broader discovery of blood donors, this court will allow the plaintiff's motion to depose the donor upon written questions and deny the plaintiff's motions in all other respects.

## II. PROCEDURAL BACKGROUND.

This case was initially filed in the State Superior Court on January 23, 1991 and subsequently removed here. The matter was then referred to a medical malpractice tribunal, which concluded on June 24, 1992 that the evidence presented was not sufficient to raise a legitimate question of liability as to either of the defendants then named, the American Red Cross and Baystate Medical Center. Following posting of the statutory bond by the plaintiff, the matter returned to this court for further proceedings.

On September 12, 1991, the plaintiff moved to remand the case to state court following the First Circuit's decision in *S.G. v. American Nat'l Red Cross*, 938 F.2d 1494 (1st Cir.1991), which held that the Red Cross charter did not create original federal jurisdiction over suits involving the Red Cross. This court recommended that the Motion to Remand be allowed and, upon objection, Sr. Judge Freedman, on February 11, 1992, ordered a stay of all proceedings pending a decision by the United States Supreme Court on the petition for *certiorari* filed by the Red Cross in the *S.G.* case. *See* — U.S. ——, 112 S.Ct. 632, 116 L.Ed.2d 602 (1991).

On March 9, 1992, the parties filed a stipulation agreeing that discovery would proceed

Philip J. Crowe, Jr., Lubin & Meyer, Boston, MA, for plaintiff.

Edward L. Donnellan, Kevin C. Giordano, Keyes & Donnellan, Springfield, MA, for Baystate Medical Center, Inc.

Peter Benjamin Ellis, Joseph D. Halpern, Foley, Hoag & Eliot, Boston, MA, Karen Keegan, Arnold & Porter, Washington, DC, for American Red Cross.

MEMORANDUM REGARDING PLAINTIFF'S MOTION TO ANONYMOUSLY DEPOSE OR SUBMIT WRITTEN QUESTIONS TO DONOR AND PLAINTIFF'S MOTION TO COMPEL ANSWERS TO SECOND SET OF INTERROGATORIES TO AMERICAN RED CROSS

(Docket Nos. 43 & 44)

PONSOR, United States Magistrate Judge.

## I. INTRODUCTION.

To what extent, if any, may the plaintiff administratrix, bringing an action on behalf

despite the stay. Pursuant to this, on June 11 and June 19, 1992 the plaintiff filed the two motions now before the court, seeking to anonymously depose or submit written questions to the donor, and seeking an order compelling answers to her second set of interrogatories. These motions were thereafter heard on July 14, 1992. Additional authority and counter-authority were submitted by the parties on September 8 and September 15, 1992.

On September 4, 1992, Sr. Judge Freedman granted the plaintiff's motion to vacate the stay following the Supreme Court's decision in *American Nat'l Red Cross v. S.G.*, — U.S. ——, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), reversing the First Circuit.

On October 14, 1992, this court granted the plaintiff's motion to amend the complaint to add the defendants Peter L. Page, M.D. and Alan W. Janes, M.D. On December 11, 1992, Sr. Judge Frank H. Freedman granted the motion of defendant Janes for referral to a medical malpractice tribunal. On December 14, 1992, certified copies of the docket were forwarded to Hampden Superior Court for referral to a tribunal. The matter is still pending in that court.

To facilitate the completion of discovery, the court will now rule on the plaintiff's two pending motions.

### III. FACTUAL BACKGROUND.

On January 4, 1985, plaintiff's decedent, Joseph N. Diabo, received a blood transfusion contaminated by the HIV virus, during a coronary bypass operation performed at Baystate Medical Center. Defendant American Red Cross apparently collected the blood product, or platelet, and shipped it to defendant Baystate Medical Center. After Joseph Diabo's discharge, the Red Cross learned that the donor whose blood was used in the bypass operation had tested positive for the HIV virus. Joseph Diabo was notified and subsequently found to have contracted AIDS

as a result of the transfusion. He died on May 29, 1988.

The core of plaintiff's claim is that the defendant Red Cross negligently screened the donor.[1] In order to pursue this claim, the plaintiff requires information with regard to the circumstances surrounding the blood donation. Not surprisingly, discovery directed at Red Cross personnel on this point has gone nowhere; no one can recall any facts about this particular blood donation. Although the defendant has produced a health history form apparently filled out by the donor, the form itself is ambiguous in certain crucial respects.[2]

Obviously, the one person who might, in fact, have some specific recollection regarding the circumstances of the blood donation is the donor himself or herself. Plaintiff wishes to ask questions regarding such things as how the donor contracted AIDS, whether the donor was a member of a high risk group, and what he or she was asked at the time of donation.

In addition, the donor in this case apparently tested positive for the HIV virus during another blood donation some six months after the donation given to Joseph Diabo. Following the second donation, the donor voluntarily enrolled in a public health study conducted by the Red Cross under the authority of the Massachusetts Department of Public Health. As part of this study, the donor answered an orally-administered questionnaire which solicited personal information concerning risk factors for HIV transmission. In the second motion to compel, the plaintiff seeks information obtained in this study.

The defendant Red Cross opposes *any* discovery of the blood donor. It argues that such an initiative would contravene Massachusetts statutory and case law prohibitions and, further, that the supposedly marginal utility of this information to the plaintiff would be far outweighed by public policy

---

1. Plaintiff does not allege that the defendant failed to employ a recognized test for detecting the presence of AIDS antibodies. At the time of the donation no such test existed.

2. The donor checked "Yes" on the question whether he or she had ever been deferred as a

blood donor and had problems donating. He first checked "No," then placed an "X" on "Yes" on the question as to whether he or she had read and understood the pamphlet, "What You Should Know About Giving Blood."

interests in maintaining a safe and adequate blood supply and avoiding undue invasions of donor privacy. With regard to the second motion to compel, the defendant contends that disclosure of the contents of the public health study is prohibited by statute and, in any event, would not lead to the discovery of information related to the subject matter of this litigation or likely to lead to the discovery of admissible evidence.

## IV. DISCUSSION.

### A. *Motion to Anonymously Depose.*

■ The defendant Red Cross contends that this motion should be denied because: (1) Massachusetts case law precludes discovery from volunteer blood donors; (2) the discovery sought is barred by Mass.Gen. Laws ch. 111 § 70E; (3) plaintiff has not shown a compelling need for the discovery, and (4) strong public policy interests mandate denial of this sort of discovery.

Much of the argument, and most of the authority, offered in opposition to plaintiff's motion criticizes discovery approaches—such as the outright disclosure of the donor's name—different from the mechanism crafted in *Watson.* For this reason it is essential at the outset to summarize what this court contemplates, as a fair basis for discussion.

As noted, the device used in *Watson* was a deposition upon written questions pursuant to Fed.R.Civ.P. 31. Questions were proposed by the plaintiff and approved with revisions by the court following defendant's objections. The name of the donor was submitted to the judge, for his eye's only. An attorney, whose name was known only to the court, was appointed to represent the donor. This attorney contacted the donor, assisted him or her in formulation of answers to the interrogatory questions and submitted the signed responses. The cost of the anonymous attorney was borne by the plaintiff, as a taxable expense in the event of a favorable outcome. The original answers were maintained under seal and a redacted copy, without the donor's signature, was supplied to both counsel. Plaintiff was allowed limited follow-up questions. The whole process was to be completed within forty-five days.

Defendant objects even to this limited process, citing unpublished Superior and Appeals Court decisions in *Roche v. The American Red Cross,* Suffolk Superior Court Civil No. 87–3923. The *Roche* decision is distinguishable, however, because in that case the donor's name would have been revealed, not only to the court, but to one counsel for each party, with the goal of direct questioning.[3] The significantly reduced level of intrusiveness under consideration here tips the fragile balance in the other direction.

As the Sixth Circuit recently pointed out in *Coleman v. American Red Cross,* 979 F.2d 1135 (6th Cir.1992), courts have taken various approaches to blood donor discovery. Most courts, like *Watson* and *Roche,* have forbidden the actual disclosure of the donor's name. Of this group, however, a substantial subgroup *has* permitted anonymous discovery along the lines proposed here. *Id.* at 1139 n. 3 and n. 4. A third group has concluded that the plaintiff's interest in discovering the donors' names outweighed the other concerns and ordered actual disclosure of the donor's identity. However, these courts "typically imposed protective orders to prevent the plaintiffs from making the names public." *Id.* n. 6. *See* Note, *Transfusion–Related AIDS Litigation: Permitting Limited Discovery from Blood Donors in Single Donor Cases,* 76 Cornell L.Rev. 927 (1991).

Given this overall tendency, it is hardly surprising that the *Roche* court, when confronted with a request for outright release of the donor's name with a view to face-to-face questioning, followed the majority in concluding that the balance favored the defendant. To repeat, however, the *Roche* decision did not address a request for *anonymous* discovery, which has enjoyed a much more generous reception from the courts.[4]

---

3. Counsel avers that anonymous discovery was raised by plaintiff, and rejected by the court, at oral argument, but Judge Mulligan's decision does not address anonymous discovery.

4. The *Coleman* decision itself, though it does bar discovery of a donor, is weak support for the defendant's position here. In that case, the court concluded that "although there are compelling arguments for each side, we cannot conclude that the district court abused discretion in find-

The defendant's second argument, that discovery is barred by Mass.Gen.Laws ch. 111, § 70E, is similarly unavailing. This statute merely makes it illegal to identify a person testing positive for the AIDS virus. The procedure mandated by the court here will not create any significant risks of identification. The defendant points to *Irwin Memorial Blood Centers v. Superior Court,* 229 Cal.App.3d 151, 279 Cal.Rptr. 911 (1991) as persuasive authority that statutes like § 70E prohibit even *anonymous* discovery. In that case, however, the donor would actually have been required to appear in person for a deposition at the blood bank and receive questions while hidden behind a screen. It is hardly surprising that the *Irwin* court rejected such a clumsy approach. In this case, the donor will never suffer a substantial risk of disclosure.

Third, it is simply impossible to accept defendant's argument that plaintiff has shown no need for the discovery sought. This argument was characterized in *Watson* as "patently disingenuous....," 974 F.2d at 488. Without such information, the Red Cross would enjoy, as Judge Hall stated, "a grant of virtual blanket immunity from donation-related liability." *Id.* at 489. The defendant vigorously asserts the privacy rights of the HIV–infected donor. It gives short shrift, however, to *any* concomitant right of family members whose loved one has died from an admittedly tainted blood transfusion to enjoy a fair opportunity to obtain discovery to support their allegations of negligence. The donor's interests are not the only ones to be placed in the balance. Indeed, without some discovery from the donor, it is difficult to see where the plaintiff here will get the ammunition to resist a motion for summary judgment, which will necessarily be based upon a record made up largely of self-serving discovery provided by the defendant about its procedures.

Finally, the policy arguments asserted by the defendant are rebutted in detail in the *Watson* decision. First, no persuasive evidence suggests that *the type of discovery contemplated here* will have any effect on the nation's blood supply. *Watson,* 974 F.2d at 485; *Snyder v. Mekhjian,* 125 N.J. 328, 593 A.2d 318, 324 (1991). Defendant argues that recently submitted survey information supports its claim of peril. But the survey format itself is almost absurdly skewed. The donor survey, appended to the defendant's Reply Memorandum (Docket No. 56), asks the following question, at Part B:

> If the Red Cross were required to release your personal history information to lawyers and courts for use in lawsuits including public trials, would you agree or disagree with the following statements.
> 1. I would be willing to give accurate information about my medical and personal history.
> 2. At my convenience, I would be willing to take three additional tests.
> 3. At my convenience, I would be willing to provide more detailed personal information.
> 4. I would be willing to donate blood again during the next twelve months.

Given the extremely prejudicial phrasing of the survey's premise, it is hardly surprising that almost no one expressed agreement with any of the four statements. Who would?

The procedure to be applied here would justify the following introductory question:

> If the American Red Cross were required to release limited personal history information regarding HIV-infected donors (but never regarding any other donors) to lawyers and courts for use in lawsuits seeking damages for injuries caused by contaminated blood, under procedures insuring the continued anonymity of the HIV-infected donor, would you agree or disagree with the following statements?

Thus phrased, it is impossible to imagine significant impact on any individual contemplating blood donation, except perhaps one concealing his or her HIV status. Moreover (as the *Watson* decision points out) given

---

ing that the interests asserted by the Red Cross outweigh the Colemans' interest in obtaining discovery from the donor." Interestingly, however, the court then went on to reverse the district

court's injunction of a lawsuit directly against the donor, who had been accidently identified during the discovery process.

that since 1985 a test is uniformly used to screen out HIV-infected blood donations, this issue is unlikely to arise very often.

The privacy concerns are equally insubstantial. For a start, under the court's order, there is almost no risk of *public* disclosure. *Watson,* 974 F.2d at 486–87; *Stenger v. Lehigh Valley Hospital Center,* 530 Pa. 426, 609 A.2d 796, 804 (1992). Certainly, the risk is much less than the Supreme Court found insufficient for a finding of violation of the rights of privacy in *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). As one court has stated, "... with no name associated with the disclosure, no disrepute can occur." *Stenger* at 800–01. *See also, Borzillieri v. American National Red Cross,* 139 F.R.D. 284, 288 (W.D.N.Y.1991).

An order, modelled on *Watson,* is attached to this Memorandum. It contemplates the prompt submission of proposed interrogatories by plaintiff with an opportunity to object by defendant. Counsel will be appointed anonymously to serve the interrogatories on the donor and assist in fashioning responses. Once the original answers are filed, copies with the signature redacted will be distributed to counsel *for counsel's eyes only.* All papers will remain under seal.

B. *Motion to Compel.*

██ Plaintiff seeks to compel defendant to answer her second set of interrogatories, which probe, among other things, how the donor contracted AIDS and if the donor was a member of a "high-risk" group. Defendant claims that the information is contained in a study entitled "Evaluation and Follow-up of Anti–HTLV III Positive Volunteer Blood Donors in Massachusetts," and is therefore protected by Mass.Gen.Laws ch. 111, § 24A.

Mass.Gen.Laws ch. 111, § 24A states that the Commissioner of the Department of Public Health may authorize scientific studies and research that have the purpose of reducing morbidity and mortality within the Commonwealth. Mass.Gen.Laws ch. 111, § 24A. The statute requires that all information

gathered through such studies shall remain confidential and "shall not be admissible as evidence in any action of any kind in any court...." Mass.Gen.Laws ch. 111, § 24A.

Under this law, the Commissioner must "authorize" the study or "cause [it] to be made...." Mass.Gen.Laws ch. 111, § 24A. According to plaintiff, defendant has not complied with this requirement. Apparently, during his deposition, Dr. Peter Page testified that he had received "reassurance" from a physician at the Department of Public Health that the requirement had been complied with. Plaintiff claims that this overture did not rise to the level of authorization required the statute. Defendant, however, has produced a letter which was apparently unavailable a the time of plaintiff's motion. This letter, dated August 5, 1980, gives explicit authorization to Dr. Page to conduct the study, and is signed by the Commissioner.[5] The authorization requirement under the statute is thus satisfied.

Plaintiff also argues that defendant never submitted an annual report to the Commissioner as required under the statute. In addition, plaintiff apparently claims that the study did not have the purpose of reducing morbidity and mortality and that the statute is therefore inapplicable.

Defendant has submitted a copy of a letter signed by Dr. Page and addressed to the Department of Health.[6] The letter, which apparently was also unavailable at the time of plaintiff's motion, states that ten copies of "the status report on Grant 359" were sent to the Department of Health. Although the defendant has not produced a copy of the report, the letter indicates that defendant did comply with the statutory requirement. In sum, the study is covered by the statute and is not discoverable.[7]

## IV. CONCLUSION.

In conclusion, the plaintiff's motion to anonymously depose the donor is hereby ALLOWED. An order implementing this rul-

---

5. The letter is attached to Defendant's opposition to Plaintiff's Motion to Compel.

6. The letter is attached to Defendant's opposition to Plaintiff's Motion to Compel.

7. It is also questionable, as defendant points out, whether the study information, obtained months after the blood donation at issue, has any relevancy to the subject matter of this litigation.

ing is attached. The plaintiff's motion to compel is hereby DENIED.

It is So Ordered.

## ORDER

Within ten (10) days of the date of this Memorandum, plaintiff will submit to the court, with a copy to the defendant, a list of no more than twenty (20) questions to be submitted to the donor. Defendant will have ten (10) days to object to specific questions.

Within ten (10) days thereafter, the court will issue an order approving a set of pertinent interrogatories. Within ten (10) days thereafter, the defendant will supply directly to the undersigned United States Magistrate Judge the name and address of the donor. This information will be supplied in a letter marked "Personal and Confidential," and will be hand delivered directly to the Magistrate Judge's chambers.

All information obtained pursuant to this order shall be maintained by the clerk in a sealed envelope marked "Confidential" and prohibiting on pain of contempt the opening of the envelope without express prior approval from the court. The court shall, in a separate order, appoint an attorney for the donor, at plaintiff's expense. The name of the attorney shall also be maintained confidentially. Following appointment, the attorney shall immediately notify the donor of his or her representation and the confidential nature of this representation under the terms of this order. The questions will then be submitted to the donor, who will file a verified copy of the answers under seal with the clerk within twenty (20) days after receipt. The verification of the donor's name will then be redacted from the original copy of the answers and this redacted document distributed to counsel for all parties. The information in the redacted answers will be for counsel's eyes only, pending further order of this court.

It is So Ordered.