99 Cal.Rptr.2d 627 (2000)
83 Cal.App.4th 347
PLANNED PARENTHOOD GOLDEN GATE, Petitioner,
v.
The SUPERIOR COURT of San Mateo County, Respondent;
Rossi Foti et al., Real Parties in Interest.
No. A090162.
Court of Appeal, First District, Division Two.
August 28, 2000.
As Modified on Denial of Rehearing September 14, 2000.
As Modified on Denial of Rehearing September 26, 2000.
Review Denied November 29, 2000.
*631 Robert J. Glynn, Esq., San Francisco, Lynne G. Stacker, Esq., Law Offices of Robert J. Glynn, LLP; Lynn H. Pasahow, Esq., Katharine L. West, Esq., Palo Alto, Leslie G. Landau, Esq., and Beth H. Parker, Esq., San Franciso, McCutchen, Doyle, Brown & Enersen, for Petitioner.
No appearance for Respondent.
Yale W. Rohlff, Esq., Donn Waslif, Esq., San Jose, Law Offices of Rohlff & Waslif; Terry Thompson, Esq., Danville, Law Offices of Terry Thompson, for Real Parties in Interest.
HAERLE, J.

I. INTRODUCTION
Petitioner, Planned Parenthood Golden Gate (Planned Parenthood), and real parties in interest Rossi Foti and Jeannette Garibaldi are parties in litigation concerning the scope of the real parties' rights to engage in antiabortion protest activities outside Planned Parenthood facilities. Planned Parenthood initiated this original proceeding to challenge a superior court discovery ruling which requires it to disclose, pursuant to a protective order, the names, residential addresses and telephone numbers of staff and volunteers who have knowledge relevant to the litigation. We stayed the superior court's order and issued an order to show cause. For the reasons discussed below, we conclude that the superior court's ruling cannot be sustained.

II. STATEMENT OF FACTS

A. The Litigation

On July 24, 1998, Rossi Foti (Foti) filed a complaint for damages and injunctive relief against Planned Parenthood and several individuals, alleging defamation, abuse of process, infliction of emotional distress and battery. According to the complaint, Foti engages in picketing, leafleting and counseling outside Planned Parenthood *632 clinics in San Mateo, Menlo Park and Redwood City "[o]n a regular basis." Foti alleged, among other things, that "`escorts' " employed by Planned Parenthood, including the named individual defendants, "physically obstruct, intimidate, and interfere with [Foti] while he is on the sidewalk lawfully exercising his constitutional rights."
On September 11, 1998, Planned Parenthood filed a cross-complaint against Foti, Jeannette Garibaldi (Garibaldi) and others. The cross-complaint alleged causes of action for interference, harassment and emotional distress. According to the cross-complaint, the cross-defendants habitually harass and intimidate Planned Parenthood employees, volunteers, patients and their companions while protesting at Planned Parenthood clinics.
Both the complaint and cross-complaint have been amended more than once. At some point, named defendant Gabriella Gibson was added as a cross-complainant and cross-claims for abuse of process, false arrest, defamation and conspiracy were also alleged.

B. Foti's Discovery Requests

In September 1998, Foti served various discovery requests on Planned Parenthood and other individual defendants. In March 1999, Foti filed a motion to compel further responses to several interrogatories and requests for production of documents. Among other things, Foti argued that Planned Parenthood improperly objected to requests for disclosure of the identities of non-party Planned Parenthood staff and volunteers as an invasion of the constitutional right to privacy. On April 12, 1999, the superior court (the Honorable Phrasel L. Shelton) appointed H. Kelly Ogle (Ogle) as the discovery referee for this case.
Ogle issued a Memorandum of Decision and Recommendation dated May 26, 1999 (the May 26 recommendation). Among other things, Ogle concluded that "[t]here is no Constitutional Right of Privacy as to Non-Party Employees, Escorts, Guards and/or Staff Employees or Corporate Officers of PLANNED PARENTHOOD AND IT IS SO ORDERED for all purposes throughout this MEMORANDUM OF DECISION and all RULINGS made and Ordered herein." Thus, when ruling on specific requests for further discovery responses, Ogle repeatedly instructed defendants to "identify" or to "specifically identify" "each and every person" with knowledge of the facts set forth in their discovery responses.[1]
Planned Parenthood objected to the May 26 recommendation. Among other things, it complained that Ogle failed to properly assess the privacy rights of nonparty staff and volunteers of Planned Parenthood. On June 30, 1999, Judge Shelton held a hearing to address several matters, including Planned Parenthood's objections to the May 26 recommendation. At that hearing, he rejected Planned Parenthood's objections without offering any opinion as to the scope or nature of the privacy rights of non-party witnesses. An order filed July 21, 1999 (the July 21 order), states: "The decision of the discovery referee as to privacy objections is confirmed." The July 21 order contains no explanation or analysis supporting this ruling.
In August 1999, Foti filed a second motion to compel. Foti argued that defendants' further responses to his discovery requests were inadequate and failed to comply with the July 21 order. Among other things, Foti complained that defendants *633 "did not provide addresses or phone numbers for the non-party witnesses identified in response to the interrogatories." In opposing Foti's motion, defendants argued that (1) the July 21 order did not require them to disclose the addresses and telephone numbers of non-party escorts and employees, (2) such information was unnecessary since those individuals were represented by counsel for Planned Parenthood, who was willing to accept service for them, and (3) such information was confidential and private.

C. Garibaldi's Discovery Requests

Meanwhile, on May 4, 1999, cross-defendant Garibaldi served various discovery requests on cross-complainants Planned Parenthood and Gabriella Gibson (collectively, Planned Parenthood). In September 1999, Garibaldi filed a motion to compel further responses. Like Foti, Garibaldi objected to Planned Parenthood's refusal to disclose the names, addresses and telephone numbers of individuals with knowledge relevant to the litigation, a refusal based on the ground that such disclosure would violate the individuals' constitutional rights of privacy. Garibaldi maintained that "there is no evidentiary privilege or exemption for persons who are percipient witnesses for non-party patients, staff, volunteers, and contractors of responding party." Planned Parenthood opposed Garibaldi's motion to compel and, on September 17, 1999, filed a motion for a protective order.

D. Recommendations of Referee Reese

On September 10, 1999, Thomas D. Reese (Reese) replaced Ogle as the discovery referee for this case.[2] On October 21, 1999, Reese held a hearing to address (1) Foti's motion to enforce the July 21 order, (2) Garibaldi's motion to compel further discovery responses, and (3) Planned Parenthood's motion for a protective order. On November 8, 1999, Reese issued a Recommended Order re Enforcement of July 21, 1999, Order (November 8 recommendation). The November 8 recommendation stated, in part:
"Defendants are ordered here again to provide addresses and/or phone numbers as were ordered by Referee Kelly Ogle in his Memorandum of Decision and Recommendation dated May 26, 1999, and as affirmed by Judge Shelton in this order dated July 21, 1999. Plaintiffs Motion to Comply with this order is granted, subject to the terms and provisions of a Protective Order recommended ordered by this Discovery Referee. The addresses and/or phone numbers of the persons above ordered identified shall be provided under the category of `Highly Confidential', or, `For Attorneys-Eyes Only.' The names of such persons shall be provided under the category `Confidential' and disclosed to only those persons necessary for the prosecution or defense of this litigation and for the purposes of this litigation only."
On November 10, 1999, Reese issued a Recommended Order re Cross-Complainants' Motion for a Protective Order and Cross-Defendants' Motion to Compel (November 10 recommendation). Reese recommended that a protective order apply to all discovery in the case and stated: "Although particular classification of documents, and other discovery responses, shall be designated by the responding party, it is anticipated that residential addresses, telephone numbers, and other personal information of non patient witnesses shall be disclosed on an `Attorneys-Eyes-Only' basis and that disclosure of the names of non patient witnesses shall be on a `Confidential' or `Litigation only' classification. Further dissemination of such information shall be protected."
In his November 10 recommendation, Reese also ruled on Garibaldi's motion to compel further discovery responses. He *634 ordered that further responses be given to many of the discovery requests at issue. In some instances, Reese ordered that Planned Parenthood produce the addresses and telephone numbers of potential witnesses "pursuant to an `Attorneys-Eyes Only' Protective Order." However, Reese denied Garibaldi's requests for disclosure of the names and personal information of patients of Planned Parenthood pursuant to the physician/patient privilege.
In the "Discussion" section of his November 10 recommendation, Reese stated: "Disclosure of names of witnesses limited to the purposes of this litigation is found to outweigh any constitutional right to privacy which may exist here. [¶] Without commenting on whether there is a constitutional right to privacy regarding disclosure of personal information about witnesses, including non-party employees, escorts and guards, the evidence ... establishes that there is substantial justification for the application of a Protective Order in this case and for the Court to carefully scrutinize what information about the persons associated with the defendants and cross-complainants needs to be produced, and to whom."
On or about November 22, 1999, Planned Parenthood objected to the November 8 recommendation and, in particular, to Reese's conclusion that Planned Parenthood must "provide addresses and/or phone numbers as ordered by Referee Ogle and as affirmed by Judge Shelton." Planned Parenthood maintained that such disclosure was not required under the prior orders and was not proper because it would pose a significant threat to the safety and well-being of Planned Parenthood employees, staff and volunteers.
On November 29, 1999, Planned Parenthood filed a motion objecting to Reese's November 10 recommendation. Specifically, Planned Parenthood requested that the superior court modify Reese's recommendation "by: 1) authorizing the use of pseudonyms for non-party physicians, staff, and volunteers affiliated with Planned Parenthood; and 2) preventing altogether the disclosure [of] the home addresses of parties and non-parties affiliated with Planned Parenthood."

E. Judge Shelton's Ruling

On February 15, 2000, Judge Shelton held a hearing to address Planned Parenthood's objections to Reese's recommendations. At the close of the February 15 hearing, Judge Shelton adopted his tentative rulings. Those tentative rulings are not in the record before us and the transcript of the hearing discloses no explanation by the court of them or their bases.
Planned Parenthood filed the instant petition for writ of mandate, prohibition or other appropriate relief on February 29, 2000 (the writ petition). On March 2, 2000, this court temporarily stayed Judge Shelton's February 15, 2000, discovery order pending determination of the writ petition and requested opposition from the real parties. Judge Shelton's written order overruling all of Planned Parenthood's objections to Reese's recommendations was filed on March 7, 2000. The March 7 order contains no explanation or analysis.
On June 6, 2000, this court issued an order to show cause directing real parties in interest Foti and Garibaldi to show cause before this court why a peremptory writ of mandate should not issue as prayed for in the petition.

III. DISCUSSION
In its writ petition, Planned Parenthood challenges two specific rulings that were implicitly adopted by the superior court when Judge Shelton overruled all objections to Reese's November 8 and 10 recommendations, namely, that Planned Parenthood must disclose (1) the names of non-party employees and volunteers whom Planned Parenthood does not intend to call as witnesses, who have not consented to have their names disclosed, and whose identities are not currently known to real *635 parties, and (2) the residential addresses and telephone numbers of non-party employees and volunteers. We confine our analysis to those specific rulings.[3]

A. Propriety of Writ Review

Writ review of a discovery ruling is proper when "the issues presented are of first impression and of general importance to the trial courts and to the profession. [Citation.]" (Johnson v. Superior Court (2000) 80 Cal.App.4th 1050, 1061, 95 Cal.Rptr.2d 864 (Johnson).) In the present case, the parties have not identified any authority addressing the particular issue presented, nor have we found any. Further, the issue is important and merits writ review because Planned Parenthood seeks to protect the constitutional rights of third parties and because no adequate remedy other than writ review is available. (See Doyle v. Superior Court (1996) 50 Cal.App.4th 1878, 1883-1884, 58 Cal. Rptr.2d 476; Tylo v. Superior Court (1997) 55 Cal.App.4th 1379, 1387, 64 Cal. Rptr.2d 731.)
Foti contends that we should not consider the substance of this writ petition because the petition is untimely. According to Foti, the superior court ordered Planned Parenthood to disclose names, addresses and telephone numbers of staff and employees in the July 21 order and yet Planned Parenthood waited seven months to file its writ petition. Foti maintains that, absent extraordinary circumstance, which do not exist here, a writ petition filed more than 60 days after issuance of the challenged order is untimely.
The July 21 order is vague. Neither the order itself nor the transcript of the hearing which preceded it contain any substantive analysis or discussion by the trial court. Rather, the court simply confirmed Ogle's May 26 recommendation to the extent it overruled Planned Parenthood's privacy objections. Ogle's May 26 recommendation required that Planned Parenthood identify potential witnesses, but it did not expressly order the disclosure of addresses and telephone numbers.
Foti relies on the fact that Reese concluded that Ogle had previously ordered disclosure of addresses and phone numbers. Even if Reese's interpretation of Ogle's recommendation was correct, Reese significantly altered the Ogle ruling that the trial court's July 21 order approved. Reese expressly stated that residential addresses and telephone numbers must be disclosed,[4] and ordered that disclosure of this information was to be made pursuant to a protective order. In other words, Reese's ruling is substantively distinct. The trial court affirmed that ruling on February 15, 2000, and Planned Parenthood filed its writ petition within 60 days thereafter.
Further, even if we were persuaded by Foti's argument that Planned Parenthood is really objecting to the July 21 order, we would still entertain this petition. "Where there is otherwise no statutory authority or time limit in filing a writ, it must usually be filed within 60 days." *636 (People v. Superior Court (Brent) (1992) 2 Cal.App.4th 675, 682, 3 Cal.Rptr.2d 375.) However, we have discretion to hear a writ petition beyond the 60-day period. (Ibid.) We exercise our discretion in favor of resolving the issue presented by the writ petition on the merits. This case implicates important privacy rights of third parties and we will not punish them for any possible failing by Planned Parenthood. (See Irwin Memorial Blood Centers v. Superior Court (1991) 229 Cal.App.3d 151,156, 279 Cal.Rptr. 911.)

B. The Law Relating to Discovery of Constitutionally-Protected Information

"The California Constitution expressly provides that all people have the `inalienable' right to privacy. [Citations.]" (Johnson, supra, 80 Cal.App.4th at p. 1068, 95 Cal.Rptr.2d 864; Cal. Const., art. I, § 1.)[5] As our Supreme Court has recently explained, "[i]n many contexts, the scope and application of the state constitutional right of privacy is broader and more protective of privacy than the [implied] federal constitutional right of privacy as interpreted by the federal courts. [Citations.]" (American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307, 326, 66 Cal. Rptr.2d 210, 940 P.2d 797.) This provision creates a zone of privacy which protects against unwarranted compelled disclosure of certain private information. (See, e.g., Britt v. Superior Court (1978) 20 Cal.3d 844, 855-856, 143 Cal.Rptr. 695, 574 P.2d 766 (Britt); Lantz v. Superior Court (1994) 28 Cal.App.4th 1839, 1853-1855, 34 Cal.Rptr.2d 358 (Lantz).)
"`Where discovery involves matters encompassed by the right to privacy, courts recognize that "judicial discovery orders inevitably involve state-compelled disclosure...." [Citation.] Therefore, in reviewing a party's resistance to a discovery order, based on the claim that it entrenches upon a constitutional right, we treat the compelled disclosure as a product of state action subject to constitutional constraints. [Citation.]'" (Lantz, supra, 28 Cal.App.4th at p. 1854, 34 Cal.Rptr.2d 358.)
"The constitutional right to privacy is not absolute and must therefore be balanced against other important interests." (Johnson, supra, 80 Cal.App.4th at p. 1070, 95 Cal.Rptr.2d 864; see also Lantz, supra, 28 Cal.App.4th at p. 1854, 34 Cal.Rptr.2d 358; Britt, supra, 20 Cal.3d at p. 855, 143 Cal.Rptr. 695, 574 P.2d 766.) "[W]henever the compelled disclosure treads upon the constitutional right of privacy, there must be a compelling state interest. [Citation.]" (Johnson, supra, 80 Cal.App.4th at p. 1070, 95 Cal.Rptr.2d 864.) To justify a substantial infringement of First Amendment rights, disclosure must serve a "compelling" state purpose, and that "`purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.'" (Britt, supra, 20 Cal.3d at pp. 855-856, 143 Cal.Rptr. 695, 574 P.2d 766.) Even when "an intrusion on the right of privacy is deemed necessary under the circumstances of a particular case, any such intrusion should be the minimum intrusion necessary to achieve its objective." (Lantz, supra, 28 Cal.App.4th at p. 1855, 34 Cal.Rptr.2d 358.) In other words, the least intrusive means should be utilized to satisfy the state's countervailing interest and "`[m]ere convenience of means or cost will not satisfy that test for that would make expediency and not the compelling interest the overriding value. [Citations.]' [Citations.]" (Ibid.)
The trial court has discretion to resolve discovery disputes. However, the court abuses that discretion if it fails to undertake the required balancing of the *637 privacy interests against the state interest in compelling disclosure. (See Johnson, supra, 80 Cal.App.4th at pp. 1061, 1073, 95 Cal.Rptr.2d 864; Lantz, supra, 28 Cal. App.4th at p. 1857, 34 Cal.Rptr.2d 358.)

C. Competing Interests in this Case

Real parties, who characterize this matter as a routine discovery dispute, maintain that no constitutional issue is presented by this case. The record suggests that the referees and trial court may have agreed with them. We do not.
First of all, the discovery order implicates the rights of non-parties to freely and privately associate with Planned Parenthood. Both the California and the United States Supreme Courts have recognized that "`[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective ... restraint on freedom of association,'" that there is a "`vital relationship between freedom to associate and privacy in one's associations,'" and that "`[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.'" (Britt, supra, 20 Cal.3d at pp. 852-853, 143 Cal. Rptr. 695, 574 P.2d 766, quoting N.A.A.C.P. v. Alabama (1958) 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488.)
Garibaldi suggests that the discovery order does not invade any right to associational privacy because it does not compel disclosure of membership or donor lists but, rather, the identity of percipient witnesses. This argument simply ignores reality. The discovery order compels disclosure of the identities and home addresses and telephone numbers of individuals who are affiliated with and work to promote the mission of Planned Parenthood. Garibaldi, Foti and the other cross-defendants oppose Planned Parenthood and its mission. Thus, compliance with the discovery order would compel Planned Parenthood to disclose the identities and personal information of individuals who support its activities to individuals and organizations who do not. Such disclosure impinges on the non-parties' right to freedom of association.
Perhaps more importantly in the present circumstances, the discovery order also impinges on non-parties' residential privacy interests by compelling disclosure of residential addresses and telephone numbers. Courts have frequently recognized that individuals have a substantial interest in the privacy of their home. (Lorig v. Medical Board (2000) 78 Cal. App.4th 462, 468, 92 Cal.Rptr.2d 862; City of Sail Jose v. Superior Court (1999) 74 Cal.App.4th 1008, 1019-1020, 88 Cal. Rptr.2d 552 (City of San Jose), and cases discussed therein.) Indeed, as the United Supreme Court recently confirmed "[t]he recognizable privacy interest in avoiding unwanted communication varies widely in different settings. It is far less important when `strolling through Central Park' than when `in the confines of one's own home,' or when persons are `powerless to avoid' it. [Citation.]" (Hill v. Colorado (2000) 530 U.S. 703, 716, 120 S.Ct. 2480, 2489, 147 L.Ed.2d 597.) This residential privacy interest is particularly potent in the context of a dispute relating to the ability of women to seek and obtain lawful services related to pregnancy. (See Planned Parenthood Assn. v. Operation Rescue (1996) 50 Cal.App.4th 290, 299, 57 Cal.Rptr.2d 736 ["if a home is involved the state interest in preserving residential privacy is exceptionally potent"].)
Foti maintains that, under these circumstances, Planned Parenthood staff and volunteers have no privacy interest with respect to their home addresses and telephone numbers because such information is routinely produced during discovery. However, "when the constitutional right of privacy is involved, the party seeking discovery of private matter must do more than satisfy the [Code of Civil Procedure] *638 section 2017 standard."[6] (Lantz, supra, 28 Cal.App.4th at p. 1853, 34 Cal. Rptr.2d 358; see also Tylo v. Superior Court, supra, 55 Cal.App.4th at p. 1387, 64 Cal.Rptr.2d 731.) As we have already explained, whether Planned Parenthood staff and volunteers' recognizable privacy interests preclude disclosure or not depends upon a balancing of the competing interests at issue.
The compelling countervailing state interest at issue in this case is reflected in California's broad discovery statutes. It is "`"the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings."'" (Moskowitz v. Superior Court (1982) 137 Cal.App.3d 313, 316, 187 Cal.Rptr. 4.) The state has an interest in "making certain that parties ... disclose relevant information to the fullest extent allowable," and in "ensuring that those injured by the actionable conduct of others receive full redress of those injuries." (Johnson, supra, 80 Cal.App.4th at p. 1071, 95 Cal.Rptr.2d 864.)

D. Balancing of Interests

1. The privacy interests at stake are particularly strong

The strength of an individual's interest in keeping personal information private depends in large part on the consequences of disclosure. Courts look to "human experience" to determine the likely effect of disclosure of the information at issue. (See City of San Jose, supra, 74 Cal.App.4th at p. 1024, 88 Cal.Rptr.2d 552, and cases discussed therein.) For example, in City of San Jose the court ruled that a newspaper could not compel a city to disclose the names, addresses and telephone numbers of individuals who had complained about airport noise. The court reasoned that it could infer from human experience that public disclosure of that information would "have a chilling effect on the number of complaints made" and that it would "subject the complainants to the loss of confidentiality in their complaints, and also to direct contact by the media and by persons who wish to discourage complaints." (Id. at p. 1024, 88 Cal.Rptr.2d 552.)
The privacy interests at issue in the present case are particularly strong because the consequences of disclosure of the private information are profound. Human experience compels us to conclude that disclosure carries with it serious risks which include, but are not limited to: the nationwide dissemination of the individual's private information, the offensive and obtrusive invasion of the individual's neighborhood for the purpose of coercing the individual to stop constitutionally-protected associational activities and the infliction of threats, force and violence.
This record contains excerpts from a website called the "Nuremberg Files" which were downloaded by Planned Parenthood's counsel. The website describes that organization as a "coalition of concerned citizens throughout the USA [who are] cooperating in collecting dossiers on abortionists...." The website seeks help collecting evidence about "abortionists" which it defines as: "1) Persons who perform abortion (doctors, nurses, etc.); [¶] 2) Persons who own or direct abortion clinics; [¶] 3) Persons who provide protection to abortion clinics (security guards, escorts, law enforcement officers, etc.); and [¶11] 4) Judges and politicians who pass or uphold laws authorizing child-killing or oppressing pro-life activists." The evidence that people are asked to collect includes "[c]urrent and past personal data including date and *639 place of birth, home and business addresses and phone numbers, Social Security numbers, automobile plate numbers, names and birthdates of spouse(s), children and friends."
The Nuremberg Files website states that "evidence we collect" will be shared with "local and national pro-life organizations" and that such information may be "useful in revealing to neighbors and colleagues of the abortionist by way of exposing the horrible crimes the people are committing." Linked to the website are various lists of "Alleged Abortionists and their Accomplices." A "legend" for the list of names states: "Black font (working); Greyed-out Name (wounded); Striketh rough (fatality)."
The Nuremberg Files website is specific evidence that Planned Parenthood's staff and volunteers could well face unique and very real threats not just to their privacy, but to their safety and well-being if personal information about them is disclosed. We are not the first court to acknowledge this fact. (See Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists (1999 D.Ore.) 41 F.Supp.2d 1130, 1133 [Nuremberg Files posed a "true threat to [cause] bodily harm, assault or kill one or more of the plaintiffs" in that case].)[7] Furthermore, this website is just one example of the potential consequences of disclosing the identities of and personal information about individuals associated with abortion providers.[8]
In 1994, the United State Congress enacted the Freedom of Access to Clinic Entrances Act of 1994 (FACE). (18 U.S.C. § 248, et seq.) FACE establishes "[f]ederal criminal penalties and civil remedies for certain violent, threatening, obstructive, and destructive conduct that is intended to injure, intimidate or interfere with persons seeking to obtain or provide reproductive health services." (United States v. McMillan (1995 S.D.Miss..) 946 F.Supp. 1254, 1258, quoting Pub.L. 103-259, § 2.) Enactment of the statute was supported by several congressional findings. Among other things, Congress found that "there was `[a] nationwide campaign of anti-abortion blockades' and violence that was `barring access to facilities that provide[d] abortion services,' [citations]; that abortion opponents had committed a least 36 bombings, 81 arsons, 131 death threats, 84 assaults, 2 kidnappings, 327 clinic invasions, 71 chemical attacks, and the murder of Dr. David Gunn, a physician who had performed abortions in Florida and several neighboring states[,] [citations]; [and] that `this conduct [wa]s interfering with the exercise of the constitutional right of a woman to choose to terminate her pregnancy, and threatened] to exacerbate an already severe shortage of qualified providers available to perform safe and legal abortions in this country.'" (946 F.Supp. at p. 1261.) Congress also expressly found that "state and local law enforcement authorities have proved unable or unwilling to address effectively `the systematic and nationwide assault that is being waged against health care providers and patients.'" (Ibid., quoting Sen.Rep. No. 117, 103d Cong., 1st Sess. 3 (1993) at p. 7, 14.) These congressional findings reflect human experience and illustrate the dangers *640 associated with disclosure of personal information about Planned Parenthood's staff and volunteers.
The California Legislature has also acknowledged the unique dangers these individuals could face. The same year that FACE became law, our Legislature enacted Civil Code section 3427 et seq. (§ 3427) in order to align state law with the objectives of the federal statute. (See Historical and Statutory Notes, 12A West Ann. Civ.Code (1997 ed.) § 3427.) Section 3427.1 makes it unlawful to "intentionally prevent an individual from entering or exiting a health care facility by physically obstructing the individual's passage or by disrupting the normal functioning of a health care facility." When such action is alleged, courts are expressly directed to "take all steps reasonably necessary to safeguard the individual privacy and prevent harassment of a health care patient, licensed health practitioner, or employee, client, or customer of a health care facility who is a party or witness in the proceeding, including granting protective orders." (§ 3427.3.) In enacting this statute, our Legislature acknowledged the need to "safeguard the privacy of patients, licensed health care practitioners, and health care facility employees, clients, and customers...." (Stats.1994, ch. 1193, Legis. Counsel's Dig. of Assem. Bill No. 600 (1993-1994 Reg. Sess.)
We realize that, in the present case, Planned Parenthood has not alleged a violation of section 3427. Nevertheless, analogous concerns about safety and privacy are present here because the litigants in this case represent opposing factions in the emotionally charged and often violent debate regarding the abortion issue, and the potential non-party witnesses whose personal information is at issue in this case are the very individuals that section 3427 is designed to protect.
Real parties ask us to ignore human experience and legislative findings and to view this case in a vacuum. According to real parties, the privacy interests of non-party staff and volunteers are minimal because there is no evidence that real parties or their counsel will invade those privacy interests. We have two responses.
First, a privacy interest does not need to be violated before it can be acknowledged. There is no requirement that Planned Parenthood's staff and volunteers must first suffer an invasion of privacy in this litigation before they can seek constitutional protection. Rather, as we have already explained, recent history teaches that the consequences of disclosure of private information about these individuals can be dire. Both the federal and state legislatures have acknowledged that the abortion debate raises unique concerns which cannot be ignored. So has the United States Supreme Court, just this term. In Hill v. Colorado, supra, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597, the Court upheld a statute that regulates speech-related conduct within 100 feet of the entrance of any health care facility. The Court found, among other things, that a state's interests in protecting the health and safety of its citizens "may justify a special focus on ... the avoidance of potential trauma to patients associated with confrontational protests." (Id. at p. 715, 120 S.Ct. at p. 2489.) The same "potential trauma" the Court alluded to obviously also impacts on non-party employees and volunteers of abortion providers. The Hill court also found that the "prophylactic" aspect of the state statute was justified by the "unique concerns that surround health care facilities." (Id. at p. 728, 120 S.Ct. at p. 2496.)
Second, there is evidence pertaining to the parties involved in this litigation that reinforces our conclusion that Planned Parenthood staff and volunteers have particularly strong interests in keeping names, addresses and telephone numbers private. This record contains evidence that Foti and Garibaldi have previously engaged in protest activities at the homes of clinic workers. There is also evidence that attorneys who represent real parties in this case have also personally engaged in such protest activities. One of these attorneys, Catherine Short of the Life Legal *641 Defense Foundation, was quoted in a newspaper as stating that "[neighborhood protests make abortionists feel justifiably shameful and guilty about what they do." Another, Terry L. Thompson, was the lead real party in interest in litigation involving picketing "of the homes of staff members of a clinic where abortions [were] performed." [9] (City of San Jose v. Superior Court (1995) 32 Cal.App.4th 330, 333, 38 Cal.Rptr.2d 205.)
Two related circumstances are noteworthy. First, Garibaldi admitted in pleadings filed in the lower court that she "is already in possession of the names of sixty-six individuals affiliated with Planned Parenthood, including physicians, staff, volunteers or escorts." We find it difficult to reconcile this evidence with Garibaldi's representation to this court that there is no danger that enforcing the lower court's discovery order will adversely affect the non-parties' constitutional rights to associational privacy.
Second, during his deposition, Foti followed the instruction of his counsel, Short, and expressly refused to answer questions about the nature and extent of his affiliation with anti-abortion groups. For example, Foti was asked: "Have you ever been a member of any antiabortion or pro-life organization?" The basis for Short's instruction not to answer this question was the "associational right to privacy." We are struck by the irony of real parties' claim to the protection of the associational right to privacy and their simultaneous refusal to acknowledge that individuals who are not even parties to this litigation also enjoy such protection. In any event, our point is that, partially due to this instruction, the record before us does not disclose the extent or nature of the involvement of real parties in the antiabortion movement.
We do not find or suggest that there is actual evidence that real parties or their counsel intend to harm non-party witnesses affiliated with Planned Parenthood or to invade their residential privacy. Rather, we simply recognize that real parties and their counsel are committed to an effort to curtail access to abortion providers, and that this commitment illustrates why the non-party staff and volunteers of an institution such as Planned Parenthood have such a strong interest in keeping personal information about themselves private.
Real parties intimate that individuals simply do not have strong privacy interests in their residential addresses and telephone numbers because such information is routinely disclosed during discovery and is often accessible by other means.[10] However, as we have already explained, human experience distinguishes Planned Parenthood's staff and volunteers from potential witnesses in "routine" civil litigation. Case law from this and other jurisdictions confirms that when the circumstances merit protection of just this type of information, courts do not hesitate to afford it.
Some of these cases pertain directly to abortion providers. (See, e.g., Fairfield Commons Condominium Assn. v. Stasa (1985) 30 Ohio App.3d 11, 506 N.E.2d 237 [in action for injunction against antiabortion protestors, trial court did not abuse its discretion by refusing to compel disclosure of names and addresses of patients or employees of clinic that provided abortion services] cert, den., sub. nom., Moriarty v. Fairfield Commons Condominium *642 Assn. (1987) 479 U.S. 1055, 107 S.Ct. 930, 93 L.Ed.2d 981; Ex Parte Mack (Ala.1984) 461 So.2d 799 [in personal injury action based on allegedly negligent performance of abortion, court did not abuse its discretion by refusing to compel disclosure of the names and addresses of patients or of individuals who were present when plaintiff received counseling services].) In Fairfield Commons Condominium Assn. v. Stasa, supra, 506 N.E.2d at p. 242, the Ohio Court of Appeals found that many reasons could justify an order precluding the disclosure of the names and addresses of patients and employees of an abortion clinic. For example, the record in that case supported the conclusion that "in light of appellants' previously demonstrated zealous convictions over the issues involved, that if appellants would have received the names and addresses of the patients and employees they may have misused this information to the detriment of those patients and employees." (Ibid.)
Cases outside the abortion context also undermine real parties' notion that disclosing home telephone numbers and addresses of witnesses is always only a minimal invasion of privacy. For example, in Denari v. Superior Court (1989) 215 Cal. App.3d 1488, 264 Cal.Rptr. 261, the trial court refused to compel disclosure of the names and addresses of individuals who were arrested or booked at a county jail on the day that the plaintiff alleged that the county used excessive force while booking her into jail. The trial court found that the plaintiff failed to make a sufficient showing to justify the invasion of the individual privacy interests at issue. (Id. at p. 1493, 264 Cal.Rptr. 261.) In denying the plaintiffs subsequent petition for writ of mandate, the court of appeal did not disagree.
Even in a criminal proceeding in which a defendant has a constitutional right of confrontation, a court has discretion to bar disclosure of the address and telephone number of an eyewitness to a crime in order to protect that person's safety, particularly when the facts raise no issue as to the witness's reputation in the community for veracity. (See Montez v. Superior Court (1992) 5 Cal.App.4th 763, 7 Cal.Rptr.2d 76; cf. also People v. Ramirez (1997) 55 Cal.App.4th 47, 56-57, 64 Cal. Rptr.2d 9.) In a later case discussing Montez and its holding, another Court of Appeal held that the determinative factor was whether there is evidence of "harassment, threats, or danger to the safety" of the potential witnesses to justify an order preventing disclosure of witness information to defense counsel.[11] (See Reid v. Superior Court (1997) 55 Cal.App.4th 1326, 1329, 1336-1339, 64 Cal.Rptr.2d 714.)
The United States Supreme Court has also acknowledged that an individual's privacy interest in his home address and telephone number is not insubstantial. Department *643 of Defense v. FLRA (1994) 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (Department of Defense).) In Department of Defense, the Court held that federal agencies could not disclose the home addresses of their employees to the employees' collective-bargaining representatives. Applying a balancing test similar to the constitutional test we use in this case, the Department of Defense Court concluded that such disclosure would constitute a "clearly unwarranted invasion" of the employees' personal privacy under the Freedom of Information Act (FOIA). (510 U.S. at p. 489, 114 S.Ct. 1006.) Although the Court based its ruling on the FOIA it also expressed "reluctan[ce] to disparage the privacy of the home, which is
accorded special consideration in our Constitution, laws, and traditions." (510 U.S. at p. 501, 114 S.Ct. 1006.) The Court also recognized that "[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." (Department of Defense, supra, 510 U.S. at p. 500, 114 S.Ct. 1006.) In other words, the right to privacy is sufficiently strong to protect a decision not to disclose personal information to a specific audience, such as the organizers of a union with whom the individual chooses not to associate. (Ibid.)
The authority we have discussed supports our assessment of the strength of the privacy interests at issue in the case before us. Regardless of whether residential addresses and telephone numbers are generally accessible, or even whether the addresses and phone numbers of these particular non-parties have been disclosed in other contexts, in this case the nonparties have a very strong privacy interest in avoiding disclosure of their residential addresses and telephone numbers to the specific audience that seeks to compel such disclosure.

2. Countervailing state interests do not justify compelling disclosure

To determine whether the state's interest relating to the promotion id liberal discovery and truth in litigation outweigh the privacy interests in this case, we must balance the privacy interests against the litigants' need for discovery. (See, e.g., Schnabel v. Superior Court (1993) 5 Cal.4th 704, 714, 21 Cal.Rptr.2d 200, 854 P.2d 1117; Palay v. Superior Court (1993) 18 Cal.App.4th 919, 934, 22 Cal.Rptr.2d 839; Johnson, supra, 80 Cal.App.4th at p. 1071, 95 Cal.Rptr.2d 864.) When the information sought "`... is essential to the fair resolution of the lawsuit, a trial court may properly compel such disclosure.'" (Johnson, supra, 80 Cal.App.4th at p. 1071, 95 Cal.Rptr.2d 864, quoting Britt, supra, 20 Cal.3d at p. 859, 143 Cal.Rptr. 695, 574 P.2d 766.)
Putting aside abstract claims of need and/or entitlement, we are hardpressed to find actual evidence in this record that real parties need the specific information at issue. Real parties contend the information is necessary in order to obtain access to potential witnesses. However, Planned Parenthood has offered to facilitate that access without having to disclose the information at issue.
The record in this case indicates that Planned Parenthood has agreed to use pseudonyms to identify staff and volunteers who may have knowledge relevant to this litigation but who Planned Parenthood does not intend to call as witnesses and whose identities have not already been discovered by the real parties. As to all nonparty staff and volunteers with relevant knowledge pertaining to this litigation, Planned Parenthood has agreed to provide its office address as a place to contact these individuals and Planned Parenthood's counsel has agreed to accept service on their behalf. These procedures will afford real parties access to potential nonparty witnesses without invading their constitutional privacy rights.
Garibaldi objects to the use of pseudonyms on the around that such a procedure *644 the fact that Garibaldi "is already in possession of the names of sixty-six individuals affiliated with Planned Parenthood" and, "[i]n light of this, the imposition of pseudonyms will create a confusing patchwork of known and unknown identities and ultimately make discovery unmanageable." We are confident that steps can be taken to avoid the confusion that Garibaldi fears. For example, if Garibaldi shares her list with Planned Parenthood, then Planned Parenthood will know that pseudonyms will not be necessary for individuals whose names already appear on Garibaldi's list.
Garibaldi also complains that permitting witnesses to use pseudonyms will unfairly prejudice the real parties at trial. At this stage in the litigation, such concerns are premature. In addition, these concerns may be unfounded since Planned Parenthood has agreed to disclose the "true identities (under protective order) of those witnesses it intends to call at trial." Furthermore, in an action alleging a violation of section 3427, using pseudonyms is expressly permitted in order to protect the privacy rights and prevent harassment of clinic staff and volunteers who are parties or witnesses. (§ 3427.3.) Analogous concerns justify using that procedure in this context as well.
Foti objects to the procedures Planned Parenthood proposes because he maintains he has a right to directly access potential witnesses. He argues that the cost of taking their depositions is prohibitive and that communicating directly with them is vital to the preparation of his case. We are not moved by Foti's argument for several reasons.
First, there may well be a question as to whether Foti's counsel may properly initiate direct contact with Planned Parenthood's staff and volunteers. (See Cal. Rules of Professional Conduct, rule 2-100(B); Mills Land & Water Co. v. Golden West Refining Co. (1986) 186 Cal.App.3d 116, 130, 230 Cal.Rptr. 461.)[12] Second, even Foti concedes that the likelihood that any of these individuals would voluntarily share information with Foti is miniscule. Third, if Foti wants to take the time to request voluntary cooperation from these individuals, he can do so by submitting such requests to them at the Planned Parenthood address that has already been disclosed. We simply fail to perceive how permitting Foti to personally confront these potential witnesses at their home promotes the state's interest in protecting truth in litigation or any other compelling state interest.
Indeed, the state has other compelling interests which would be served by protecting the privacy interests at issue in this case. As Division Four of this court has recognized, the "state has strong concerns in: (1) protecting the freedom of women to seek lawful services in connection with pregnancy, (2) the delivery of those services with appropriate privacy, (3) preserving public safety and order by ensuring the free flow of vehicular and pedestrian traffic, and (4) preserving property rights. [Citations.] ... And if a home is involved the state interest in preserving residential privacy is exceptionally potent. [Citation.]" (Planned Parenthood Assn. v. Operation Rescue, supra, 50 Cal.App.4th at p. 299, 57 Cal.Rptr.2d 736.) Precluding discovery of the information at issue in this case will not only further the state's interest in preserving residential privacy, it will also advance the state's interest in protecting those individuals who *645 provide "lawful services in connection with pregnancy."
As we have explained, the extent of any invasion of privacy regarding potential witnesses in an action, and whether it should be permitted at all, depend on the circumstances of the particular case. In this particular case, the privacy interests of the non-parties are strong because disclosure would threaten these individuals' peace and safety. The state's interest in promoting truth in litigation is comparatively weak. In other words, real parties have not demonstrated a need for the discovery which would justify an invasion of the substantial privacy interests involved.

E. The Protective Order

As noted above, Reese recommended that identities of non-parties affiliated with Planned Parenthood be disclosed pursuant to a "`Confidential' or `litigation only' classification," and that residential addresses and telephone numbers be disclosed "on an `Attorneys-Eyes Only' basis." Real parties maintain that the recommended protective order adequately protects the privacy interests of non-party witnesses. We disagree for at least two reasons.
First, since privacy interests outweigh countervailing state interests, there is simply no justification for any invasion of the non-parties' privacy rights. Second, as noted above, even when an intrusion on the right of privacy is necessary, that intrusion must be the "minimum intrusion necessary" to satisfy the state's countervailing interest. (Lantz, supra, 28 Cal. App.4th at p. 1855, 34 Cal.Rptr.2d 358.). Here, even with its protective features, the recommended order is unnecessarily intrusive. It authorizes disclosure of private information about nonparties associated with Planned Parenthood to active participants in the antiabortion movement. And, although we do not assume the recommended protective order will be violated, the potential consequences of such a violation pose too serious of a risk for us to ignore.
Further, the risk is unnecessary. The state's interest in promoting truth in litigation, the real parties' interests in obtaining access to potential witnesses, and the privacy interests of third parties can all be accommodated by an order which (1) permits Planned Parenthood to use pseudonyms to identify potential third-party witnesses whom Planned Parenthood does not intend to call as witnesses and whose identities are currently unknown to real parties; and (2) permits Planned Parenthood to offer its own address and telephone number instead of disclosing the residential addresses and telephone numbers of third party staff and volunteers with respect to whom Planned Parenthood's counsel has agreed to accept service of process.
The superior court's discovery order constitutes an abuse of discretion. The court failed to balance the constitutional privacy interests of non-parties against the state's interest in compelling disclosure of the information at issue. Indeed, the court may not have recognized the overriding privacy interests at issue in this case at all. Accordingly, we conclude that the superior court's discovery order must be vacated.

IV. DISPOSITION
Let a peremptory writ of mandate issue commanding respondent superior court to vacate that part of its discovery order which compels disclosure of (1) the identities of non-party staff and volunteers of Planned Parenthood who have refused to consent to such disclosure; and (2) the home addresses and telephone numbers of non-party Planned Parenthood staff and volunteers. Respondent is directed to enter a new and different order that is consistent with this opinion. Costs are awarded to Planned Parenthood.
KLINE, P.J., and RUVOLO, J., concur.
NOTES
[1] However, Ogle found that personal information about patients of Planned Parenthood did not need to be disclosed. Thus, for example, in ruling on Foti's Special Interrogatory 25 to an individual defendant, Ogle stated: "[Defendant] shall specifically identify each and every Person (specifically excluding names, addresses, initials or telephone numbers of Patients only of Planned Parenthood's Clinics per Constitutional Physician-Patient Privilege applicable in this Litigation) who has knowledge of the facts stated in [defendant's] AFFIRMATIVE RESPONSE TO Special Interrogatory No. 23."
[2] In response to an alternative writ of mandate issued by this court on August 18, 1999, Judge Shelton (1) granted Planned Parenthood's motion challenging Ogle, and (2) appointed Reese as the new discovery referee.
[3] We clarify the issues at the outset because the briefs filed in this court create a great deal of confusion as to the nature of the rulings at issue. Furthermore, our conclusion as to the issues presented by the writ petition makes it unnecessary for us to address Foti's argument that Reese properly recommended that Planned Parenthood be sanctioned. Reese's recommendation regarding sanctions is not an issue raised by the writ petition.
[4] Foti argues elsewhere in his brief that he and Garibaldi "did not seek `home addresses' and telephone numbers of witness, only addresses and phone numbers." The record does not support this contention. In any event, the February 15 discovery order, which is under review here, clearly does compel disclosure of home addresses and telephone numbers. Reese expressly recommended that "it is anticipated that residential addresses, telephone numbers, and other personal information of non patient witnesses shall be disclosed on an `Attorneys-Eyes-Only' basis and that disclosure of the names of non patient witnesses shall be on a `Confidential' or `Litigation only' classification." The superior court adopted that recommendation.
[5] Article 1, section 1 of our state constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."
[6] Section 2017, subdivision (a), of the Code of Civil Procedure provides, in part: "Unless otherwise limited by order of the court in accordance with this article, any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence."
[7] Shortly before the October 1998 murder of a Buffalo, New York, physician who performed abortions, the operator of the Nuremberg files website publicly acknowledged that he "wouldn't be surprised" if someone used his site to pick a victim because "[t]he situation we're looking at inevitably incites certain people to take the lives of those who are killing children." (Note, The Freedom of Access to Clinic Entrances Act and The Nuremberg Files Web Site: Is the Site Properly Prohibited or Protected Speech? (2000) 51 Hastings L.J. 411, 415.)
[8] We fully understand that Planned Parenthood provides a wide-range of pregnancy-related services. We use the term "abortion provider" only because it is that aspect of the services it provides which, clearly, provokes the actions and reactions which form the basis of this litigation.
[9] This fact was both conceded at oral argument and is reflected in the records of the Sixth District Court of Appeal, records of which we take judicial notice. (Evid.Code, § 452, subd. (c).)
[10] The only authority real parties cite which arguably supports this proposition is Valley Presbyterian Hospital v. Superior Court (2000) 79 Cal.App.4th 417, 2000 WL 307501. Valley Presbyterian, which involved very different facts, was recently depublished by our Supreme Court. (Valley Presbyterian Hospital v. Superior Court (2000) 00 C.D.O.S. 5786.)
[11] Recently, our Supreme Court explained that the criminal defendant's constitutional right to confront and cross-examine witnesses necessarily limits a trial court's discretion to preclude disclosure of witness information. (Alvarado v. Superior Court (2000) 23 Cal.4th 1121, 1126, 99 Cal.Rptr.2d 149, 5 P.3d 203 (Alvarado).) In Alvarado, the trial court issued an order which permitted the prosecution to withhold the identities of crucial prosecution witnesses from the defendants and their counsel both prior to and at trial. The Alvarado court held this order was valid to the extent it authorized withholding witness information prior to trial. (Id. at p. 1136, 99 Cal.Rptr.2d 149, 5 P.3d 203.) However, the court held that "when nondisclosure of the identity of a crucial witness will preclude effective investigation and cross-examination of that witness, the confrontation clause does not permit the prosecution to rely upon the testimony of that witness at trial while refusing to disclose his or her identity." (Id. at p. 1151, 99 Cal.Rptr.2d 149, 5 P.3d 203.)

The Alvarado holding does not alter our analysis because this is not a criminal case and because, as we discuss later, Planned Parenthood has agreed to disclose the names of witnesses it intends to call at trial. However, we note that the Alvarado court repeatedly acknowledged the "serious nature and magnitude of the problem of witness intimidation" and it also acknowledged the state's fundamental obligation to protect the safety of witnesses. (Alvarado, supra, at 1149-1150, 99 Cal.Rptr.2d 149, 5 P.3d 203.)
[12] The parties strongly disagree as to whether ethical rules prevent counsel for real parties from directly contacting non-party staff and volunteers of Planned Parenthood. We need not resolve that dispute in order to answer the distinct question posed by the writ petition, i.e., whether the constitutional right to privacy precludes disclosure of the names, residential addresses and phone numbers of these non-party witnesses. However, we do note that this record contains a letter from Planned Parenthood's counsel to Foti's counsel which states: "Please be advised that this office represents all Planned Parenthood Golden Gate past and present employees, staff and volunteers."