[No. C046721. Third Dist. Jan. 27, 2005.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
ANASTACIO VARGAS LOPEZ, Real Party in Interest.

## COUNSEL

John D. Phillips, District Attorney, Greg J. Furey and Kevin A. Hicks, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Gerald L. Gleeson, Public Defender, Ellen S. Schwarzenberg and Nelson C. Lu, Deputy Public Defenders, for Real Party in Interest.

## OPINION

**BUTZ, J.**—Following a finding that real party in interest (defendant) was not competent to stand trial on three counts of child molestation (Pen. Code, § 288, subd. (a)),[1] respondent (trial court) ordered defendant placed in an "alternative placement." Petitioner (the People) seeks a writ of mandate directing the trial court to vacate its order placing defendant in alternative placement and to order defendant confined in a state hospital or other facility for a minimum of 180 days.

Consistent with the statutory and case law discussed herein, we shall issue a peremptory writ directing the trial court to order defendant delivered to a state hospital or other secure treatment facility.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2002, defendant, then 79 years old, was charged with three counts of child molestation involving two victims.

Two doctors were appointed to evaluate defendant to determine if he was competent to stand trial. (§§ 1368, 1369, subd. (a).) Based on the reports of the doctors, the trial court found defendant was not competent, and the matter was continued for a placement report.

The trial court received conflicting recommendations concerning whether defendant should be placed in a state hospital or in a community placement, and a formal placement hearing was held. At the conclusion of testimony, the trial court appointed a doctor to evaluate whether it would be possible for defendant to gain competency. The trial court also directed the parties to file briefs concerning whether defendant was required to undergo a period of confinement in a state hospital or other facility.

---

[1] Undesignated statutory references are to the Penal Code.

According to the subsequent evaluation, defendant had untreatable degenerative dementia, but defendant's depression was amenable to treatment, which might result in "modest improvement in attention, focus, and perhaps motivation." The evaluator concluded: "It appears quite unlikely, but I suppose not totally out of the realm of possibility, that this treatment might restore him to marginal competency . . . ."

The community program director of the state Forensic Conditional Release Program (CONREP), in consultation with a forensic team, recommended that defendant be placed in an inpatient treatment facility.

At a hearing on February 13, 2004, the People argued that the trial court was required to order defendant placed in a locked facility. Defendant's attorney maintained the trial court had discretion to place defendant in the community.

The trial court found it would be "a useless act to send [defendant] for competency training" and ordered defendant placed in an "alternative placement." The trial court made "a specific finding [that] alternative placement will provide appropriate treatment for the defendant and not pose a danger to the health and safety of others."

On April 27, 2004, the People filed a petition for writ of mandate. On May 27, 2004, we granted an alternative writ to review the propriety of the trial court's order.

## DISCUSSION

### I. Timeliness of Writ Petition

■ We begin by addressing defendant's claim that the People should be denied relief because their writ petition was not filed within 60 days of the trial court's order. It is true that, when there is no statutory time limit on filing a writ petition, a 60-day period usually is imposed. (*Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347, 356 [99 Cal.Rptr.2d 627] (*Planned Parenthood*).) However, "the approach of the Supreme Court to the timeliness of a petition has been one of laches." (*People v. Superior Court* (*Clements*) (1988) 200 Cal.App.3d 491, 496 [246 Cal.Rptr. 122] (*Clements*), citing *Peterson v. Superior Court* (1982) 31 Cal.3d 147, 163 [181 Cal.Rptr. 784, 642 P.2d 1305]; *Bryant v. Superior Court* (1936) 16 Cal.App.2d 556, 561 [61 P.2d 483].) "Under the doctrine of laches a writ may be denied where a party unreasonably delays in filing the petition and there is prejudice to the real party in interest." (*H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1368 [118 Cal.Rptr.2d 71].)

Defendant is correct that the People's writ petition was filed more than 60 days after the trial court's placement order—74 days to be exact. However, while the record does not reveal any reason for the slight delay in filing the petition, there is also no claim that defendant was prejudiced by the delay.

■ Moreover, this court has discretion to hear a writ petition beyond the 60-day period. (*Planned Parenthood*, *supra*, 83 Cal.App.4th at pp. 356–357.) We deem it appropriate in this matter to exercise our discretion in favor of reaching the merits of the People's petition because it presents a question of first impression and an issue of importance to the public. (See *Clements*, *supra*, 200 Cal.App.3d at pp. 496–497.)

## II. Mandatory Confinement—Section 1601, Subdivision (a)

We turn to the People's substantive claim. Citing section 1601, subdivision (a), the People argue that the trial court erred by placing defendant directly in outpatient treatment. The People are correct.

Section 1601, subdivision (a), provides in relevant part: "In the case of any person charged with and found incompetent on a charge of . . . a violation of Section 288 . . . outpatient status under this title shall not be available until that person has actually been confined in a state hospital or other facility for 180 days or more after having been committed under the provisions of law specified in Section 1600."

■ Defendant was found incompetent to stand trial on three counts of section 288, subdivision (a). Consequently, the trial court was first required to order him confined in a state hospital or other facility pursuant to section 1601, subdivision (a).

Relying on section 1370, subdivision (a)(1)(B)(ii) (hereafter subdivision (a)(1)(B)(ii)) (the same statutory authority relied on by the trial court), defendant claims the trial court had the authority to bypass inpatient treatment under the present circumstances. Subdivision (a)(1)(B)(ii) provides: "[I]f the action against the defendant who has been found mentally incompetent is on a complaint charging a felony offense specified in Section 290, the prosecutor shall determine whether the defendant previously has been found mentally incompetent to stand trial pursuant to this chapter on a charge of a Section 290 offense, or whether the defendant is currently the subject of a pending Section 1368 proceeding arising out of a charge of a Section 290

offense.[2] If either determination is made, the prosecutor shall so notify the court and defendant in writing. After this notification, and opportunity for hearing, the court shall order that the defendant be delivered by the sheriff to a state hospital or other secure treatment facility for the care and treatment of the mentally disordered unless the court makes specific findings on the record that an alternative placement would provide more appropriate treatment for the defendant and would not pose a danger to the health and safety of others."

Subdivision (a)(1)(B)(ii) was added to section 1370 in 1996 by Assembly Bill No. 2104. (Stats. 1996, ch. 1026, § 1.) Initially, we note that the author of the bill intended this language to ensure that a defendant charged with a section 290 offense who had been found incompetent could "not be put on outpatient status, or delivered to a group home, or residential facility." (Sen. Com. on Crim. Proc., Analysis of Assem. Bill No. 2104 (1995–1996 Reg. Sess.) July 2, 1996, p. 16 <http://www.leginfo.ca.gov/> [as of Jan. 27, 2005].) In other words, the amendment was not intended to provide a loophole for defendants who otherwise would be subject to the mandatory confinement time set forth in section 1601. To the contrary, the intent was to assure inpatient treatment for a broad category of sex offenders who might otherwise be eligible for outpatient treatment.

■ More significant to the present matter, subdivision (a)(1)(B)(ii) applies only if the defendant has been found mentally incompetent to stand trial on a section 290 offense *and* he falls into one of two prerequisite categories: (1) he previously was found incompetent to stand trial on a section 290 offense, or (2) he "is currently the subject of a *pending Section 1368 proceeding* arising out of a charge" listed in section 290. (Subd. (a)(1)(B)(ii), italics added.) As we shall explain, defendant falls into neither category.

With regard to the first category, there is nothing in the record to indicate defendant was previously found incompetent to stand trial on an offense listed in section 290. As to the second category—whether the defendant "is currently the subject of a pending Section 1368 proceeding" based on an offense listed in section 290—we conclude this language refers to a *separate* proceeding from the one before the trial court.

---

[2] Section 290, subdivision (a)(2), lists the offenses for which a defendant is required to register as a sex offender upon conviction.

■ Section 1368 addresses the initial step in the process of determining whether a defendant is competent to stand trial. Thus, the phrase "a pending section 1368 proceeding" in subdivision (a)(1)(B)(ii) refers to a proceeding in which the defendant's competency has not yet been determined. However, the subdivision states, initially, that it applies to a defendant who has already "been found mentally incompetent" to stand trial on a section 290 offense. Thus, the subdivision contemplates two proceedings—one in which the defendant already has been found incompetent and one in which the defendant's competency is still at issue.

■ Any other interpretation of subdivision (a)(1)(B)(ii) would render much of its language surplusage, " ' "[a] construction . . . to be avoided." ' " (*California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 358, 366 [5 Cal.Rptr.3d 127].) For example, if the fact that a defendant has been found incompetent to stand trial for a section 290 offense in the current proceeding were sufficient to satisfy the requirement of a "pending section 1368 proceeding," this second prerequisite category would apply in every case, rendering it unnecessary for the prosecuting attorney to ever make a determination whether either of the two prerequisite categories applied.

There is no indication in the record that there was another case involving a section 290 offense pending against defendant, or any other pending competency proceeding. Because defendant falls into neither of the two prerequisite categories for application of subdivision (a)(1)(B)(ii), the subdivision does not apply.

Defendant contends that section 1601 is invalid because it "does not create any of the safeguards that the Supreme Court found necessary for an involuntary commitment statute to be constitutional." Misguidedly, defendant relies on cases addressing the validity of sexually violent predator (SVP) statutes (Welf. & Inst. Code, § 6600 et seq.) to support this claim.

■ "[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." (*Jackson v. Indiana* (1972) 406 U.S. 715, 738 [32 L.Ed.2d 435, 451, 92 S.Ct. 1845] (*Jackson*); see *Foucha v. Louisiana* (1992) 504 U.S. 71, 79 [118 L.Ed.2d 437, 447, 112 S.Ct. 1780]; *In re Davis* (1973) 8 Cal.3d 798, 804 [106 Cal.Rptr. 178, 505 P.2d 1018].) The rationale for pretrial commitment of a mentally incompetent defendant is to provide treatment so that

competency may be attained and trial on the charges may proceed. (See *Jackson, supra,* at p. 735 [32 L.Ed.2d at p. 449].) SVP statutes, on the other hand, are enacted to address the problem posed by repeat sexual offenders who have completed a term of incarceration but continue to represent a danger to the public. (*People v. Ward* (2002) 97 Cal.App.4th 631, 636 [118 Cal.Rptr.2d 599]; see *Kansas v. Hendricks* (1997) 521 U.S. 346, 350 [138 L.Ed.2d 501, 508, 117 S.Ct. 2072] (*Hendricks*).)

Consequently, defendant's reliance on criteria that have been established for valid SVP statutes—a trial before commitment, a finding of dangerousness and a finding that the defendant has serious difficulty controlling his behavior—is inapt. (See *Hendricks, supra,* 521 U.S. 346, 357–360 [138 L.Ed.2d 501, 512–514].) While these requirements clearly relate to the purpose for commitment of a sexually violent predator, they are irrelevant to the rationale for committing a defendant who is incompetent to stand trial. For example, although a defendant is entitled to a trial on the issue of competency, once adjudged incompetent, a defendant *cannot* be made to stand trial on criminal offenses. (§§ 1367, 1369.)

Finally, defendant argues that section 1601 violates due process as applied to him because he "will likely never achieve trial competency" and, therefore, his commitment would serve no purpose. We rejected this argument in *People v. Amonson* (2003) 114 Cal.App.4th 463, 472 [7 Cal.Rptr.3d 831] (*Amonson*), and we reject it again here.

*Amonson* involved a developmentally disabled defendant who was determined by the evaluating doctors to be unlikely to gain trial competency. All of the experts agreed that he would benefit from outpatient treatment and that he did not pose a danger. The defendant's offense was one of those listed in section 1601, subdivision (a), and the trial court ordered him confined for 180 days. (*Amonson, supra,* 114 Cal.App.4th at pp. 466–467.)

Similar to defendant here, the defendant in *Amonson* argued that the statutorily mandated period of confinement in section 1601 was unconstitutional as applied to him because he was not dangerous and his competency could not be restored. We rejected this argument, concluding: "Although the experts have forecast that defendant's condition will not improve, the Legislature could rationally favor experience over prognostication and require a short period of actual confinement in the controlled environment of a secure facility." (*Amonson, supra,* 114 Cal.App.4th at p. 473.)

However, we also determined that the defendant's progress toward competency must be reviewed within 90 days of commitment. (*Amonson, supra*, 114 Cal.App.4th at p. 473.) We noted the United States Supreme Court's holding in *Jackson* that " ' "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than *the reasonable period of time necessary to determine* whether there is a substantial probability that he will attain that capacity in the foreseeable future." ' " (*Amonson*, at p. 472, quoting *Jackson, supra*, 406 U.S. at p. 738 [32 L.Ed.2d at p. 451], italics added by *Amonson*.) We also noted that the provisions in sections 1370 and 1370.1 for a 90-day review of progress toward competency were added by the Legislature to comply with *Jackson*'s reasonableness requirement. (*Amonson*, at pp. 472–473; §§ 1370, subd. (b)(1), 1370.1, subd. (b)(1).) In addition, these statutory amendments provide that if the 90-day report "indicates that there is no substantial likelihood that the defendant will regain mental competence in the foreseeable future," the defendant must be returned to the committing court for civil commitment proceedings. (§ 1370, subd. (b)(1); see also §§ 1370, subd. (c)(2), 1370.1, subds. (b)(2), (c)(2).)

Although the defendant in *Amonson* was found incompetent based on a developmental disability, the statutory provisions for a defendant found incompetent based on a mental disorder are nearly identical. (§§ 1370, 1370.1.) Consequently, despite the provision in section 1601, subdivision (a), for a minimum confinement period of 180 days, defendant's progress must be reviewed by the trial court after 90 days to determine whether there is a substantial likelihood he will gain competency in the foreseeable future. If there is such a likelihood, defendant must remain confined pursuant to the mandatory provisions of section 1601, subdivision (a). However, if there is no substantial likelihood that defendant will regain competency in the foreseeable future, he must be returned to the committing court for civil commitment proceedings. (§ 1370, subd. (b)(1).)

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order placing defendant in alternative placement and to enter a new order directing that defendant be delivered to a state hospital or other secure treatment facility in accordance with the views expressed herein (§ 1601, subd. (a)).

Davis, Acting P. J., and Hull, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied March 23, 2005. Kennard, J., was of the opinion that the petition should be granted.