[No. B221376. Second Dist., Div. Five. Apr. 29, 2011.]

JAMES C. FOLGELSTROM, Plaintiff and Appellant, v.
LAMPS PLUS, INC., Defendant and Respondent.

COUNSEL

Harrison Patterson & O'Connor, James R. Patterson; Stonebarger Law and Gene J. Stonebarger for Plaintiff and Appellant.

Sheppard Mullin Richter & Hampton, Phillip A. Davis and Robert Mussig for Defendant and Respondent.

OPINION

ARMSTRONG, J.—Plaintiff and appellant James C. Folgelstrom (plaintiff) appeals the judgment entered in favor of Lamps Plus, Inc. (Lamps Plus), following the latter's demurrer to plaintiffs' complaint. Based on the holding of *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524 [120

Cal.Rptr.3d 531, 246 P.3d 612] (*Pineda*), we reverse the judgment and order the trial court to overrule the demurrer to plaintiff's cause of action alleging a violation of the Song-Beverly Credit Card Act of 1971 (Credit Card Act) (Civ. Code, § 1747 et seq.). We hold that the trial court properly sustained the demurrers addressed to the additional causes of action alleged by plaintiff, as we explain below.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit against Lamps Plus, alleging that the retailer routinely asks its customers for their ZIP codes during credit card transactions so that it can obtain their home addresses for the purpose of mailing marketing materials to them. According to plaintiff's complaint, Lamps Plus misrepresents the purpose of requesting the ZIP code, either actively (by falsely stating that it is needed for surveys) or passively (by relying on the customer's mistaken belief that the ZIP code aids in authorizing the credit transaction). Lamps Plus then provides the customer's name, credit card number and ZIP code to Experian Marketing Services, a third party credit reporting agency. Experian matches the information provided by Lamps Plus with the customer's address stored in its own records to produce a mailing list, which it licenses Lamps Plus to use.

Based on these facts, plaintiff sought recovery against Lamps Plus for violation of the Credit Card Act, invasion of his common law and constitutional rights to privacy, and violation of Business and Professions Code section 17200, the unfair competition law (UCL).

Relying on the Fourth District Court of Appeal's opinion in *Party City Corp. v. Superior Court* (2008) 169 Cal.App.4th 497 [86 Cal.Rptr.3d 721] (*Party City*), the trial court ruled that a ZIP code is not "personal identification information," and therefore sustained Lamps Plus's demurrer to plaintiff's cause of action under the act. The court also dismissed plaintiff's causes of action for invasion of privacy and unfair competition. Plaintiff appeals the judgment subsequently entered.

## STANDARD OF REVIEW

On appeal from a judgment of dismissal entered after a demurrer has been sustained, this court reviews the complaint de novo to determine whether it states a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We assume the truth of all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) The judgment must be affirmed if it is

proper on any lawful grounds raised in the demurrer. (*DiPirro v. American Isuzu Motors, Inc.* (2004) 119 Cal.App.4th 966, 972 [14 Cal.Rptr.3d 787].)

## DISCUSSION

■ Following *Party City, supra*, 169 Cal.App.4th 497 a second case concerning the same issue was heard by the same District Court of Appeal; it adopted the reasoning of *Party City* to rule that a ZIP code is not "personal identification information" within the meaning of the Credit Card Act. The California Supreme Court granted review in the latter case and, on February 11, 2011, issued its opinion holding that "requesting and recording a cardholder's ZIP code, without more, violates the Credit Card Act." (*Pineda, supra*, 51 Cal.4th at pp. 527–528.) Both parties agree, as do we, that based on *Pineda*, this court must reverse the judgment in this case and order the trial court to overrule Lamps Plus's demurrer to plaintiff's Credit Card Act claim. We are thus left to decide the propriety of the trial court's order sustaining Lamps Plus's demurrer to the remaining three causes of action.

### 1.  *Violation of the state constitutional right to privacy*

■ The elements of a cause of action for violation of the California Constitution's guaranteed right to privacy are "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39–40 [26 Cal.Rptr.2d 834, 865 P.2d 633].) "Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court. [Citations.] Whether plaintiff has a reasonable expectation of privacy in the circumstances and whether defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact. If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." (*Id.* at p. 40.)

Residential privacy interests have been recognized in a number of cases. (*Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347, 359 [99 Cal.Rptr.2d 627] and cases cited therein.) "Courts have frequently recognized that individuals have a substantial interest in the privacy of their home." (*Ibid.*) As the United States Supreme Court has observed, "The unwilling listener's interest in avoiding unwanted communication . . . is an aspect of the broader 'right to be let alone' that one of our wisest Justices characterized as 'the most comprehensive of rights and the right most valued by civilized men.' *Olmstead v. United States*, 277 U.S. 438,

478 [72 L.Ed. 944, 48 S.Ct. 564] (1928) (Brandeis, J., dissenting).[1] The right to avoid unwelcome speech has special force in the privacy of the home . . . ." (*Hill v. Colorado* (2000) 530 U.S. 703, 716–717 & fn. 24 [147 L.Ed.2d 597, 120 S.Ct. 2480].)

Plaintiff relies on just two cases, *Hill v. National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th 1 and *Planned Parenthood Golden Gate v. Superior Court*, *supra*, 83 Cal.App.4th 347, to support its contention that Lamps Plus violated his constitutional right to privacy. However, the facts of those cases are not remotely similar to those present here. In *Hill*, student athletes challenged as an unconstitutional invasion of their right to privacy the NCAA requirement that they provide urine samples under closely monitored conditions. Plaintiff offers no explanation of why we should find a privacy interest in plaintiff's address based on the Supreme Court's conclusion that performing a bodily function under the watchful eye of strangers implicates a privacy interest.

*Planned Parenthood* concerned the state-compelled disclosure of private information by means of judicial discovery orders. Specifically, the court was reviewing a discovery order which required disclosure to abortion clinic protesters of the names, home addresses and telephone numbers of abortion clinic employees and volunteers. The fact that a court has recognized that an abortion clinic worker has a privacy interest in her home address vis-à-vis the abortion clinic protester who is suing the employer does not support the conclusion that this court should recognize a privacy interest on the part of plaintiff to not receive unsolicited mailings from a retail business. The two privacy interests at issue are simply not analogous, even though they both concern an individual's address.

Additional cases finding violations of the constitutional right to privacy concern public disclosure of private facts, such as California Highway Patrol officers' Internet dissemination of photographs of the decapitated corpse of an accident victim (*Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856 [104 Cal.Rptr.3d 352]) and the gratuitous disclosure of a patient's HIV status (*Urbaniak v. Newton* (1991) 226 Cal.App.3d 1128 [277 Cal.Rptr. 354]) or the improper use of confidential mental health records (*Susan S. v. Israels* (1997) 55 Cal.App.4th 1290 [67 Cal.Rptr.2d 42]). Plaintiff does not cite these cases, much less explain how

---

[1] "This common-law 'right' is more accurately characterized as an 'interest' that States can choose to protect in certain situations. See *Katz* v. *United States*, 389 U.S. 347, 350–351 [19 L.Ed.2d 576, 88 S.Ct. 507] (1967)."

the legal analysis of the privacy interests at stake in them weighs in favor of a finding of a legally protected privacy interest in this case.

■ In any event, even if we assume that plaintiff has a protected privacy interest in his home address, we conclude that the conduct of which plaintiff complains does not constitute a "serious" invasion of privacy.

"Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms.underlying the privacy right." (*Hill v. National Collegiate Athletic Assn., supra,* 7 Cal.4th at p. 37.) Here, the supposed invasion of privacy essentially consisted of Lamps Plus obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior.

### 2. *Common law tort of invasion of privacy*

Plaintiff alleged that Lamps Plus's conduct of obtaining his ZIP code under false pretenses and using it for its own marketing purposes constituted an intrusion subjecting it to liability for invasion of his common law right to privacy.

■ As our Supreme Court explained in *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 231 [74 Cal.Rptr.2d 843, 955 P.2d 469], California has adopted the Restatement Second of Torts formulation of the intrusion-into-private-matters tort: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." (Rest.2d Torts, § 652B, boldface omitted.) "[T]he action for intrusion has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." (*Shulman, supra,* at p. 231.) "To prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, *or obtained unwanted access to data about,* the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." (*Shulman v. Group W Productions, Inc., supra,* at p. 232, italics added.)

As with the alleged constitutional violation, whether or not plaintiff has sufficiently alleged an intrusion into his private matters, the conduct of which he complains does not meet the standard of "highly offensive." Indeed, we have found no case which imposes liability based on the defendant obtaining unwanted access to the plaintiff's private information which did not also allege that the *use* of plaintiff's information was highly offensive. However questionable the means employed to obtain plaintiff's address, there is no allegation that Lamps Plus used the address once obtained for an offensive or improper purpose.

Finally, we note that plaintiff seeks to add gravity to his privacy claims by suggesting that Lamps Plus's conduct increased the risk that he would be victimized in an identity theft scam. This is a speculative conclusion of fact which we may disregard on review of a demurrer. (*Zelig v. County of Los Angeles, supra,* 27 Cal.4th at p. 1126.)

### 3.   *Unfair competition*

The trial court sustained Lamps Plus's demurrer to plaintiff's UCL claim, finding that he did not have standing to sue because he had alleged no injury in fact, a requirement of the UCL.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." (Bus. & Prof. Code, § 17200.) Since the voters approved Proposition 64 in 2004, a private person has standing to sue under the UCL "only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition.' (§ 17204, as amended by Prop. 64, § 3; see also § 17203, as amended by Prop. 64, § 2.)" (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207].) As the Supreme Court recently explained in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310 [120 Cal.Rptr.3d 741, 246 P.3d 877], "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice . . . that is the gravamen of the claim." (*Id.* at p. 322, original italics.)

Unlike in the typical UCL lawsuit, plaintiff here does not allege that he made a purchase or otherwise parted with money on account of Lamps Plus's allegedly unfair practices. Rather, he argues that he suffered an "injury in fact" within the meaning of the UCL because he lost "his intellectual property

rights in his home address." Although he acknowledges that he did not suffer an out-of-pocket monetary loss, he claims that he is entitled to "restitution of the fair compensation for his personal information" measured by the license fee Lamps Plus paid to Experian to obtain the address. The argument lacks merit.

Plaintiff cites no authority in support of his novel argument that his address is his intellectual property. Plaintiff did not create his address; rather, the address was assigned by a governmental authority to identify a particular parcel of property and its location for purposes of, among others, public safety, recordkeeping, tax collection and mail delivery. None of the usual incidents of property ownership, such as the right to sell, mortgage, or transfer one's interest in property, adheres in an address. In short, plaintiff's intellectual property rights are not implicated in this case.

Moreover, even if plaintiff had an intellectual property interest in his address, he does not explain how that interest has been economically diminished by Lamps Plus. That is to say, the Supreme Court has made clear that the injury-in-fact element of a UCL claim refers to an *economic* injury; " 'a UCL plaintiff's "injury in fact" [must] specifically involve "lost money or property." ' " (*Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at p. 324, quoting *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1348, fn. 31 [90 Cal.Rptr.3d 589].) The fact that the address had value to Lamps Plus, such that the retailer paid Experian a license fee for its use, does not mean that its value to plaintiff was diminished in any way.

Finally, we note that any claim that plaintiff is entitled to restitution on account of the "sale" of his address would presumably be directed to Experian, the entity which sold the information, not to Lamps Plus, which paid for it.

In sum, plaintiff does not allege that he suffered an economic injury as a result of Lamps Plus's challenged business practice. Consequently, the trial court properly sustained the demurrer to plaintiff's UCL claim.

Lamps Plus moved to strike the portions of plaintiff's supplemental brief which discuss *Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th 310, and the injury-in-fact requirement of a UCL claim, an issue outside the scope of our January 20, 2011 request for additional briefing, which was limited to the issue of the effect of *Pineda* on resolution of this appeal. We deny the motion. In the alternative, Lamps Plus requested an opportunity to file an additional brief to address the Supreme Court's opinion in *Kwikset.* Given our resolution of this appeal, we deny this request as well.

## DISPOSITION

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion. Appellant to recover costs on appeal.

Turner, P. J., and Mosk, J., concurred.

On June 7, 2011, the opinion was modified to read as printed above.