Filed 11/29/22  Kaoud v. Hanna CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LAILA KAOUD, | B316034 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20TRCV00448) |
| v. | |
| MOURAD HANNA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deirdre H. Hill, Judge.  Affirmed.

Law Office of William F. Clark and William F. Clark for Plaintiff and Appellant.

Law Office of Merna Abdelmalak and Merna Abdelmalak for Defendants and Respondents.

———————————————

Laila Kaoud[1] (appellant) appeals from a judgment in favor of defendants Mourad and Mercurious (Mark) Hanna following an order sustaining defendants' demurrer to plaintiffs' third amended complaint, without leave to amend. Appellant contends the trial court erred in sustaining a demurrer to the sole cause of action in that complaint for financial elder abuse. Appellant also requests we order the trial court to grant appellant leave to file a further amended complaint alleging additional facts in support of plaintiffs' elder abuse cause of action.

After reviewing the allegations of the third amended complaint, and drawing all reasonable inferences in favor of appellant, we conclude the third complaint fails to allege a claim for financial elder abuse against either Mourad or Mark Hanna. Although appellant asserts she could plead additional facts to amend her cause of action for financial elder abuse, we conclude that the additional facts she proffered in her opening brief and at oral argument would not cure the deficiencies in her third amended complaint. We thus affirm.

## FACTUAL BACKGROUND

The following summary of facts is taken from the third amended complaint and exhibits attached to that pleading. In

---

[1] The judgment was entered against Laila Kaoud and her husband, Naguib. Naguib Kaoud passed away on November 10, 2021, after entry of judgment and before plaintiffs filed their opening brief. Although the opening brief names both Naguib and Laila Kaoud as appellants, the notice of appeal and civil case information statement, as well as the reply brief, name Laila Kaoud as the sole appellant. We thus treat the appeal as one by Laila Kaoud. For clarity's sake, we refer to plural plaintiffs in describing proceedings in the trial court.

2019, plaintiffs owned a home in Rolling Hills Estates, California. Defendant Mourad Hanna is a licensed real estate broker doing business as Hanna Realty. Mark Hanna is Mourad Hanna's son and a licensed real estate "salesperson."

On April 8, 2019, plaintiffs and their son, Ausama Kaoud, entered into a residential listing agreement giving Hanna Realty exclusive right to list their home for sale. Plaintiffs selected Hanna Realty because the Hannas were "long time family friends" and because they believed the Hannas "would be fair and honest in their dealings" with plaintiffs. The Hannas also speak Arabic, plaintiffs' native language. The listing agreement had a one-year term from April 8, 2019, to April 8, 2020. The parties agreed to list the Kaouds' home for sale at $1,777,000, and Hanna Realty would be paid its share of a total commission of five percent of the purchase price.[2]

On February 19, 2020, plaintiffs accepted an offer from Aaron Tran to purchase their home for $1,350,000. Plaintiffs allege that thereafter, "numerous issues" arose between the buyer, plaintiffs, and defendants. One such issue, just prior to the close of escrow, involved the commission payable to Hanna Realty. According to plaintiffs, after "significant negotiations" the parties agreed that Hanna Realty would be paid a commission of $6,250 at closing. The parties' agreement is reflected in an amended escrow instruction dated April 22, 2020, signed in counterparts by the Kaouds and by Hanna Realty.

The sale closed on April 24, 2020. Within days following the closing, Mark Hanna informed plaintiffs that he needed $10,000 to cover the cost of his upcoming wedding, and he asked

---

[2] See footnote 7, *post*.

plaintiffs to pay him that sum.  After some discussions, plaintiffs paid $10,000 to Mark Hanna.  Mark Hanna refused to return these funds, or to provide a repayment schedule.

Plaintiffs filed a complaint against defendants on June 26, 2020.  Their original complaint alleged causes of action for breach of contract and financial elder abuse as defined in Welfare and Institutions Code[3] section 15610.30.  Within a month of filing the complaint, and before defendants filed a responsive pleading, plaintiffs filed a first amended complaint.  The amended pleading added the Kaouds' son, Ausama Kaoud, as a plaintiff, as well as a new claim for damages based on a $10,000 credit to the purchaser that was included in an amended escrow instruction without obtaining Ausama Kaoud's consent to the credit.

Defendants filed a general demurrer, as well as special demurrers asserting the complaint was uncertain, and did not specify whether the contract in dispute was written or oral.  The trial court sustained the demurrer with leave to amend without specifying which demurrers it was sustaining.

Plaintiffs filed a second amended complaint adding a new cause of action for breach of fiduciary duty and prayer for punitive damages.  Defendants demurred and moved to strike the fiduciary duty cause of action and prayer for punitive damages. The trial court sustained the demurrer to the first cause of action for breach of contract without leave to amend and the second cause of action for elder abuse with leave to amend.  The court granted defendants' motion to strike the third cause of action for breach of fiduciary duty because plaintiffs had not requested

_____

[3] Unspecified statutory citations are to the Welfare and Institutions Code.

4

leave to add a new cause of action to the second amended complaint. The court also struck the punitive damages allegations for lack of specificity.

Plaintiffs filed a third amended complaint, the pleading that is the subject of this appeal. This pleading made several substantive changes to the second amended complaint. First, it alleges a single cause of action for financial elder abuse. Second, Ausama Kaoud is no longer a plaintiff. Third, the allegations omit reference to the $10,000 credit to the purchaser. Thus, the only remaining allegation of financial elder abuse is the $10,000 payment to Mark Hanna following close of escrow.

Defendants filed a general demurrer and a special demurrer for uncertainty. In support of the general demurrer, defendants argued the third amended complaint is a "sham pleading." They also argued the complaint fails to allege with particularity facts constituting elder abuse. Plaintiffs asserted in their written opposition to the demurrer that the elder abuse claim was well-pleaded, but plaintiffs neither requested leave to amend nor indicated how they would amend in the event leave were granted.

The trial court sustained the demurrer to plaintiff's elder abuse cause of action without leave to amend. The court found "[p]laintiffs have not alleged that defendant Mark Hanna had an intent to defraud or facts to show undue influence . . . ." Specifically, the court concluded that "the allegations that the parties were 'long time family friends,' they all spoke Arabic, Mark Hanna was the real estate broker, and that the $10,000 was given 'without a contractual obligation' are insufficient to show undue influence or a wrongful act." The court entered a judgment of dismissal on August 2, 2021, and appellant filed a

notice of appeal on September 29, 2021.  We have jurisdiction to review the judgment pursuant to Code of Civil Procedure section 904.1, subdivision (a)(1).

## DISCUSSION

### A.    Standard of Review

"As a demurrer tests the sufficiency of the complaint as a matter of law, it raises only an issue of law (Code Civ. Proc., § 589, subd. (a)), as to which our review is de novo." (*Hilliard v. Harbour* (2017) 12 Cal.App.5th 1006, 1010.)  On an appeal from a judgment of dismissal after the trial court has granted an order sustaining a demurrer, an appellate court reviews the complaint de novo to determine whether it states a cause of action.  (See *Folgelstrom v. Lamps Plus, Inc.* (2011) 195 Cal.App.4th 986, 989.)  In compliance with Code of Civil Procedure section 452, we construe the complaint "liberally . . . with a view to substantial justice between the parties."  "We deem to be true all material facts properly pled.  [Citation.]  We must also accept as true those facts that may be implied or inferred from those expressly alleged.  [Citation.]' " (*Balikov v. Southern Cal. Gas Co.* (2001) 94 Cal.App.4th 816, 819.)  We do not assume the truth of contentions, deductions, or conclusions of fact or law.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  When a trial court sustains a demurrer without leave to amend, we review the denial of leave to amend for abuse of discretion.  (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)  " 'It is plaintiffs' burden to show either that the demurrer was sustained erroneously or that the trial court's denial of leave to amend was an abuse of discretion.' [Citation.]" (*Alborzi v. University of Southern California* (2020) 55 Cal.App.5th 155, 168–169.)

6

Although there are no transcripts of any trial court proceedings in our record, we still may address the instant appeal to the extent the appeal raises only an issue of law as to the sufficiency of the elder abuse allegations in the third amended complaint. (See *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 699.)

## B. The Relevant Provisions of the Elder Abuse Act

"The Legislature enacted the [Elder Abuse and Dependent Adult Civil Protection] Act to protect elders by providing enhanced remedies to encourage private civil enforcement of laws against elder abuse and neglect. [Citation.] An elder is defined as "any person residing in this state, 65 years of age or older." [Citation.] The proscribed conduct includes financial abuse. The financial abuse provisions are, in part, premised on the Legislature's belief that in addition to being subject to the general rules of contract, financial agreements entered into by elders should be subject to special scrutiny." (*Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 478.)

In relevant part, the Elder Abuse and Dependent Care Act (the Elder Abuse Act) provides that " '[f]inancial abuse' " of an elder occurs when "a person or entity . . . [¶] . . . [t]akes . . . [¶] real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both" (§ 15610.30, subd. (a)(1) & (2)), or "by undue influence" (*id.*, subd. (a)(3)). The Act further provides that someone "takes" "property when an elder . . . is deprived of any property right, including by means of an *agreement [or] donative transfer. . . .*" (*Id.*, subd. (c), italics added.) A taking is for a "wrongful use" when a party "knew or should have known that [its] conduct is likely to be harmful to the elder . . . adult." (*Id.*, subd. (b).) " 'Undue Influence' " is defined as "excessive persuasion that causes another person to act or refrain from

7

acting by overcoming that person's free will and results in inequity." (§ 15610.70, subd. (a).) The test for " '[u]ndue influence' " is governed by a series of listed factors, including the "vulnerability of the victim" (*id.*, subd. (a)(1)), the "influencer's apparent authority" (*id.*, subd. (a)(2)), the "actions or tactics used by the influencer" (*id.*, subd. (a)(3)), and the "equity of the result" (*id.*, subd. (a)(4)).

The Elder Abuse Act reflects the Legislature's finding that elders are particularly vulnerable to abuse and that "this state has a responsibility to protect" them. (§ 15600, subd. (a).) Since its enactment in 1982, the statute has been amended several times to strengthen and expand its remedies to encourage private enforcement and to achieve the Act's purpose to protect elders. (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 858 (*Mahan*).) As illustrative, in 2004 the Legislature "created a new class of claims for 'financial abuse,' enacting a private enforcement provision—section 15657.5— tailored to these claims in particular. Section 15657.5 sets forth a scheme of heightened remedies closely paralleling those available under section 15657, but with some key differences, principally that attorney's fee and cost awards are available for 'financial abuse' claims proved by the preponderance of the evidence, while clear and convincing evidence remains the standard applicable to fee and cost recovery for claims of 'physical abuse' or 'neglect.' " (*Mahan*, at p. 859, fn. omitted.)

"In 2008 the Legislature acted again, broadening the defined term 'financial abuse' and making procedural changes designed to facilitate the bringing of 'financial abuse' claims. In an extensive set of amendments, the Legislature, among other things, (1) redefined what it means to take property for a

'wrongful use,' replacing the prior requirement that 'bad faith' be shown with a standard based on . . . whether the defendant 'knew or should have known' of 'likely' harm to the elder (§ 15610.30, subd. (b)); (2) redefined the phrase 'takes, secretes, appropriates, obtains, or retains' so that any 'depriv[ation]' of property was subject to liability, including 'by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly' by the elder or on his behalf by a third party (§ 15610.30, subd. (c)); and (3) created a new basis for liability, adding 'depriv[ation]' of property by 'undue influence' (§ 15610.30, subd. (a)(3)) as a ground for suit separate from 'depriv[ation]' 'for a wrongful use or with intent to defraud' (§ 15610.30, subd. (a))." (*Mahan*, *supra* 14 Cal.App.5th at pp. 859–860, fns. omitted.) In its current form, then, section 15610.30 provides that " '[f]inancial abuse' of an elder" can arise in three ways: through "wrongful use or with intent to defraud" (§ 15610.30, subd. (a)(1)), or by "undue influence" (*id.*, subd. (a)(3).

In light of the Legislature's clear expression of its intent, "[w]here there is room for debate regarding the meaning of the statutory text of the Act, it should be 'liberally construed on behalf of the class of persons it is designed to protect,' and in a manner compatible with its 'overall remedial purpose.' [Citation]." (*Ring v. Harmon* (2021) 72 Cal.App.5th 844, 853; see also *Mahan*, *supra*, 14 Cal.App.5th at p. 857 [counseling against a "stingy reading" of the Elder Abuse Act and reversing an order sustaining a demurrer to a claim for financial elder abuse].)

**C.      Even Giving Full Measure to the Remedial Purpose of the Elder Abuse Act, We Conclude Plaintiffs Failed To Allege a Cause of Action for Financial Elder Abuse Against Either Defendant**

As noted above, the elements of a cause of action for financial elder abuse are (1) the defendant took, hid, appropriated, obtained or retained plaintiff's property; (2) plaintiff is at least 65 years of age or a dependent adult; (3) the defendant took, hid, appropriated, obtained or retained plaintiff's property for a wrongful use, with the intent to defraud, or by undue influence; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing plaintiff's harm.  (See CACI No. 3100.)

We turn first to whether plaintiffs stated a cause of action for financial elder abuse against Mourad Hanna.  Plaintiffs alleged that it was Mark Hanna, not his father, Mourad, who approached them and requested the $10,000.  They alleged the ostensible reason for the request was that Mark Hanna needed the money.  There are no allegations about Mourad Hanna anywhere in the third amended complaint, other than to identify him as a defendant and as Mark Hanna's father.   No liberal construction of the third amended complaint allows us to deem Mourad Hanna as having asked plaintiffs for $10,000, to include him as having received the $10,000 plaintiffs allege they paid to Mark Hanna, or to infer any wrongdoing by Mourad Hanna.  We conclude that plaintiffs failed to allege facts that Mourad Hanna took or obtained any of plaintiff's property in violation of the Elder Abuse Act. Accordingly, the trial court did not err in sustaining  Mourad Hanna's demurrer to the third amended complaint.

10

We turn next to plaintiffs' allegations regarding Mark Hanna. The trial court found "the allegations are insufficient to support a claim for elder abuse" because plaintiffs did not allege "that defendant Mark Hanna had an intent to defraud or facts to show undue influence." Plaintiffs have adequately alleged that Mark Hanna "obtained" or "retained" plaintiffs' property, and that plaintiffs are over 70 years old, and therefore within the protections provided in the Elder Abuse Act. Plaintiffs, however, have failed to state a claim as to the remaining elements of a financial elder abuse cause of action.

The third element requires plaintiffs to allege that Mark Hanna acquired their property for a wrongful use, with intent to defraud, or by undue influence. We limit our review to whether plaintiffs adequately pleaded "wrongful use" or "undue influence," the two theories addressed in their third amended complaint.

In order to show that Mark Hanna obtained $10,000 from plaintiffs for a wrongful use, plaintiffs had to plead that Mark Hanna "knew or should have known that this conduct [was] likely to be harmful" to plaintiffs. (See § 15610.30, subd. (b).) Here, plaintiffs alleged they needed the $10,000 "for their living expenses and long-term health care," and that the loss of those funds would deprive them of "support [for] Plaintiffs' medical care in their advanced years." They also alleged defendants "clearly knew, or should have known" that plaintiffs would need these funds. Each of these allegations is conclusory.

For example, the allegation that defendants "knew, or clearly should have known" that plaintiffs would need the $10,000 they gave Mark Hanna "for their medical care in their advanced years," does not include *why* Mark Hanna "knew, or

11

should have known" this to be the case. In fact, appellant's opening brief undermines the allegation that Mark Hanna "knew or should have known" that plaintiffs would be harmed by the loss of $10,000. According to the opening brief, Mark Hanna approached plaintiffs "only a few days after the consummation of the sale transaction on their home, knowing that Appellants were 'flush' from the property's net sale proceeds."

Equally conclusory is plaintiffs' allegation they were harmed because "Plaintiffs would need the money as they continue to age" and "[t]he money may be used to support Plaintiffs' medical care in their advanced years." Presumably any person, whether or not over the age of 65, is better off with $10,000 than without it, but we cannot accept that the Legislature intended such a low bar for a showing of "harm" under the Elder Abuse Act.

Plaintiffs' allegation that Mark Hanna obtained their $10,000 through "undue influence" fares no better. Plaintiffs' claim of "undue influence" arises from Mark Hanna requesting $10,000, ostensibly to pay for his upcoming wedding. We recognize that, because direct evidence of undue influence is rarely obtainable, courts are often obliged "to infer undue influence from the totality of the circumstances." (*Keading v. Keading* (2021) 60 Cal.App.5th 1115, 1126.) Here, however, plaintiffs allege nothing more than a single request for a simple favor. There is nothing inherently coercive in a young man asking for financial assistance from "life long friends" whom he knows to be "flush with cash" after selling their home. Plaintiffs allege nothing from which we could reasonably infer undue influence—that is, "excessive persuasion that causes another person to act . . . by overcoming that person's free will and results

12

in inequity." (*See Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, 1171 (dis. opn. of Rothschild, J.) [cautioning against "embellish[ing] plaintiffs' allegations in a manner that . . . extends well beyond the limits of reasonable inference."].)

Section 15610.70, subdivision (a) states that "[i]n determining whether a result was produced by undue influence, all of the following shall be considered:" (1) The vulnerability of the victim . . . . (§ 15610.70, subd. (a)(1); [¶] (2) The influencer's apparent authority . . . (*id.* at subd. (a)(2); [¶] (3) The actions or tactics used by the influencer . . . (*id.* at subd. (a)(3); [and] [¶] (4) The equity of the result" (*id.* at subd. (a)(4)). In its order sustaining defendants' demurrer, the trial court correctly observed "the allegations are conclusory and insufficient as to the factors for the court to consider, especially as to (3) and (4), where the allegations do not show improper or wrongful actions or tactics used by Mark or an inequity of result." The court further noted that "the allegations that the parties were 'long time family friends,' they all spoke Arabic, Mark Hanna was the real estate broker, and that the $10,000 was given 'without a contractual obligation' are insufficient to show undue influence or a wrongful act." Here, too, the trial court is correct.

Plaintiffs' allegations in support of their undue influence claim do not support an inference that either plaintiff was "vulnerab[le]" (§ 15610.70, subd. (a)(1)), Mark Hanna asserted any "apparent authority" (*id.*, subd. (a)(2)) over plaintiffs, or Mark Hanna employed "actions or tactics" (*id.*, subd. (a)(3)) likely to break down plaintiffs' free will. Although it is true plaintiffs allege Mark Hanna took advantage of his friendship to obtain money, and section 15610.70, subdivision (a)(3)(B) includes the "[u]se of affection, intimidation, or coercion" as a factor to be

13

considered in determining whether undue influence occurred, that is not enough to elevate a simple favor to a cause of action for financial elder abuse. We conclude that the existence of a friendship, unaccompanied by any other factor set out in section 15610.70, subdivision (a)(3), nor any showing of an inequitable result under section 15610.70, subdivision (a)(4),[4] is not enough to plead a cause of action for "undue influence" by Mark Hanna.

## D.     Appellant Has Not Shown She Could Amend To State a Cause of Action for Financial Elder Abuse

As previously noted, the trial court sustained defendants' demurrer without leave to amend. Although we do not have the benefit of a transcript of the hearing, plaintiffs' written opposition to the demurrer neither requests leave to amend nor represents how plaintiffs would do so, and plaintiff's opening brief on appeal does not assert that leave to amend was requested in the trial court. On appeal, however, appellant requests leave to amend her elder abuse cause of action in the third amended complaint.[5]

---

[4] Plaintiffs have not sufficiently alleged that the transfer of $10,000 to Mark Hanna "result[ed] in inequity" for the same reasons they failed to allege harm amounting to "wrongful use." Although we can infer that plaintiffs would be better off with $10,000 in hand, we cannot infer actual "harm" or "inequity" from plaintiffs' conclusory allegations that they "may" need the money for life expenses or future medical care.

[5] Appellant's opening brief suggests that appellant also seeks leave from us to amend her complaint to add a new cause of action for breach of fiduciary duty against both Mourad and Mark Hanna. At oral argument, counsel clarified that appellant

14

There is no question that a plaintiff may request leave to amend in the Court of Appeal, even if the plaintiff did not do so in the trial court. Code of Civil Procedure section 472c, subdivision (a) provides the issue of whether the trial court abused its discretion by sustaining a demurrer without leave to amend is "open on appeal even though no request to amend such pleading was made." Our cases are in accord. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746 ["The issue of leave to amend is always open on appeal, even if not raised by the plaintiff."]; see also *Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1041–1042 ["[a] showing that the complaint can be amended to state a cause of action" can be made on appeal rather than in the trial court.].) If, on appeal, the appellant requests leave to amend existing causes of action, appellant must demonstrate how he or she would amend the complaint in order to state a cause of action. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388 ["The burden is on the plaintiffs to demonstrate that the trial court abused its discretion and to show in what manner the pleadings can be amended and how such amendments will change the legal effect of their pleadings."].)

Appellant has not met this burden. She proposes to amend her elder abuse claim by adding additional details regarding the following: (1) "the sharing of similar customs and culture [which] built a foundation upon which trust was easily established by Appellants;" (2) "Appellants were vulnerable to Respondents' persuasion" in the absence of their son, Ausama Kaoud, and

is not making any such request. Accordingly, we address only whether appellant could amend her third amended complaint to allege a cause of action for financial elder abuse.

15

Mark Hanna took advantage of this vulnerability by approaching appellants when he knew Ausama would be absent; and (3) Mark Hanna deliberately approached appellants just after closing the sale of their house when they knew plaintiffs "would have ample funds." In addition, appellant represents she would add that her late husband was particularly vulnerable to Mark Hanna's persuasion by reason of his being frail and in ill health and, on information and belief, that Mark Hanna misrepresented he needed $10,000 to pay for his upcoming wedding. At oral argument appellant's counsel stated that, in addition to the foregoing facts, appellant would allege Mourad Hanna drove Mr. or Mrs. Kaoud to the bank to obtain the $10,000 to pay Mark Hanna.

We conclude none of these additional allegations would alter our conclusion that plaintiffs have not stated a cause of action for financial elder abuse against Mark Hanna despite having been given the opportunity to do so in the several iterations of their pleading. We have already observed that a cause of action for financial elder abuse can be based on three different theories: wrongful use, intent to defraud, or undue influence.

Appellant's new allegations still fail to establish the element of harm to Naguib or Laila Kaoud to establish elder abuse by either wrongful use or intent to defraud.[6] Nothing in

[6] To the extent that appellant seeks to amend to assert a new theory of financial elder abuse by intent to defraud, the bare allegation that appellant is "informed and believe[s]" that Mark Hanna did not need the $10,000 to pay for his wedding would not state a cause of action on that theory. A plaintiff cannot allege fraud on information and belief without also alleging the facts on which that belief is founded. (*Dowling v.*

16

the proposed new pleading alleges some "harm" other than in an abstract sense, anyone is better off with an additional $10,000 on hand, especially given that appellant also states that plaintiffs were "flush" with cash after the sale of their home.

The only new allegation relevant to an undue influence claim is that Mark Hanna approached plaintiffs to ask for money when he knew that Ausama Kaoud would be absent. Although it is true that the "actions or tactics" that may give rise to an undue influence claim under section 15610.70, subdivision (a)(3) include "controlling . . . the victim's interactions with others," merely alleging that Mark Hanna asked for money when Ausama Kaoud was absent falls short of pleading that Mark Hanna "controlled" the Kaouds' access to supportive family members. For the same reasons that appellant's proposed new allegations do not adequately plead "harm" by wrongful use, they do not allege an "inequitable result" resulting from undue influence. Appellant herself asserts in her appellate briefing that she and her late husband were "flush with cash" following the sale of their home in which they paid defendants a fraction of the commission that would otherwise have been due.[7] On the record before us, we

_____

*Spring Valley Water Co.* (1917) 174 Cal. 218, 221 ["[I]t is not sufficient to allege fraud or its elements upon information and belief, unless the facts upon which the belief is founded are stated in the pleading."]; see *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1158–1159.)

[7] The Kaouds' listing agreement with Hanna Realty provided for a total commission of five percent of the sale price of the Kaouds' home. Appellants' counsel acknowledged at oral argument that the five percent commission would be shared between Hanna Realty and the buyer's broker. In their respective briefs, both parties assert that Hanna Realty's share of

17

cannot conclude that granting Mark Hanna's request for $10,000 brought about an "inequitable result."

Finally, under the case law and statutory definitions set forth in our discussion, we conclude appellant has failed to demonstrate how adding an allegation that Mourad Hanna drove plaintiffs to the bank to obtain the $10,000 to pay Mark Hanna would cure the defects in in the financial elder abuse claim against the senior Hanna. We conclude this allegation does not rescue that claim against Mourad Hanna.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.                CHANEY, J.

---

the commission, based on the sale price, would have been $33,750.